ROBERT E. ATKINSON, ESQ.
Nevada Bar No. 9958
Email: r.atkinson@kupperlin.com
**KUPPERLIN LAW GROUP, LLC**
10120 S Eastern Ave, Suite 202
Henderson, NV 89052
Telephone: (702) 614-0600
Facsimile: (702) 614-0647
*[Proposed] Reorganization Counsel for Debtor*

E-FILED: September 25, 2009

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF NEVADA**

In re:

AIRCRAFT INVESTOR RESOURCES, LLC
a Nevada limited liability company;

Debtor

Case No. 09-26950
Chapter 11 voluntary

Date: September 30, 2009
Time: 4:00 p.m.

**DECLARATION OF JEFF SANDERS IN SUPPORT OF DEBTOR'S OPPOSITION TO KING'S EMERGENCY MOTION**

I, Jeff Sanders, am the interim manager of Aircraft Investor Resources, LLC, the debtor in this bankruptcy case. I declare the following statements based on my personal knowledge of the events, to the best of my recollection and memory:

1. Debtor is in the aircraft manufacturing industry. Its manufacturing capacity is in a facility located at 22590 Nelson Rd, Bend, OR 97701 ("*Property*"). The Property parcel is owned by the City of Bend, and is located on the grounds of the Bend Municipal Airport.

2. The Debtor does not currently have active operations. Its former CEO, Rick Schrameck, lives in Las Vegas.

3. Debtor is embroiled in two current lawsuits: one with landlord ER1, LLC ("ER1"), and the other with the various aircraft kit customers of ACS (the "Builders"). The key witnesses in this case are thus likely to be:

a. Rick Schrameck, the Debtor's former CEO, current member of Quick-Turn Technologies, and, importantly, a current member (and former managing member) of ER 1, LLC, the evicting landlord. He resides in Las Vegas, Nevada.

b. ER1, LLC, the evicting landlord. ER1, LLC is headquartered in Las Vegas, NV. Its current managing member, Ed Nigro, is a well-known developer in Las Vegas.

c. Jeff Sanders (myself), current interim manager of Debtor. I reside in California.

d. The Builders. The Builders live across the U.S. and the world. Precisely none live in Oregon.

e. Douglas King. Movant himself lives in Santa Maria, CA.

4. Per Google Maps, Las Vegas is approximately 417 miles from Santa Maria; Bend Oregon, on the other hand is twice as far away to him: 881 miles.

5. Transfer cannot and will not promote the economic administration of the estate because Debtor simply cannot afford to change venues. If the court transfers the case to the District of Oregon, Kupperlin Law will not be able to transfer with the case, and so new counsel will have to be found, at potentially great expense to Debtor. That new counsel will have to spend time learning about the Debtor and its situation, incurring more expense coming up to speed while Kupperlin Law performs a hand-off of the case. It could be greatly difficult to even find anyone willing to take on an existing Chapter 11 case. Even if such counsel could be found, Debtor has insufficient funds to retain such a firm.

6. Furthermore, if the case is transferred and competent new counsel cannot be found in a timely fashion, then the case would be dismissed, which would enable ER1 to foreclose on their lien, at great calamity to the Debtor (and the creditors, as well).

7. I concur that the automatic stay provisions of 11 USC §362 applies. I, like movant King, am highly concerned that ER1 might move, on its own initiative, any items of Debtor's out of the primary facility at 22590 Nelson Road.

8. The Debtor does not own the airplane kits or parts. Those are owned by the Builders. None are scheduled on Debtor's schedules.

9. The core issue thus appears to be one of determination as to which assets are Debtor's, and which are not. Debtor needs to determine whose parts are whose, and does not believe that the Builders or ER1 know, either.

10. Debtor therefore respectfully requests that the Court consider issuing order that no creditor -- ER1, or the Builders, or ex-employees -- may move any non-Debtor-owned asset out of any facility of Debtor until a proper inventory can be completed and filed with the Court.

11. Critically, the inventory accounting will require AIR access to the facility, and so Debtor also request that the Court order that Debtor be provided full access.

12. The landlord, ER1, is co-owned by Quick-Turn Technologies Nevada LLC ("*Quick-Turn*"), which in turn is owned by Mr. Schrameck, who at all material times was the CEO of the Debtor/tenant. Schrameck directed substantial payments from Debtor/tenant to Quick-Turn at a time when the company was insolvent. At the same time Mr. Schrameck paid these sums to Quick-Turn, which co-owned the landlord ER1, the landlord claimed a rent arrearage for unpaid rents accumulated during that same period. The payments from Debtor/tenant to the landlord's owner and agent Quick-Turn should be either characterized as rent paid to the landlord, or else equitably set off against any rent claimed by ER1. As a result the Debtor/tenant was not in default of the lease and the reentry and continued possession by the landlord was and is unlawful. Accordingly, Debtor asks the court allow Debtor (as tenant) to reenter the leased property pending this action and also an accounting of all sums paid by Debtor to ER1 and/or its agents or members.

13. I am a partner of the Sanders Family Limited Partnership, which is one of members of debtor Aircraft Investor Resources LLC. The other members of that entity are Basis Partners LLC, owned by Mike Shealy, and Quick Turn LLC, which is owned by Mr. Schrameck, who was the manager and the CEO of the Debtor.

14. Aircraft Investor Resources LLC was sued by an entity called Blue Sky Avgroup LLC in federal court in Oregon. On June 29, 2009, Blue Sky Avgroup filed a motion to appoint a receiver over Aircraft Investor Resources, LLC. A hearing was set on that motion for August 25, 2009. At that hearing, the parties presented a stipulated order appointing a receiver for the court's consideration. The court signed the stipulated order on August 25, 2009. However, the terms of

that receivership were expressly effective only upon the posting of a bond and the satisfactory completion of engagement agreement between the receiver and the various plaintiffs and intervenors who had requested the receiver.

15. On September 4, 2009, the appointed receiver Conrad Myers submitted a letter stating that "Mr. Myers has been unable to reach an agreement on the terms of an engagement contract and consequently his appointment has not taken effect," and that Mr. Myers was specifically disclaiming and renouncing any role as receiver under the court's August 25, 2009 order. Sanders believes that the reason Mr. Myers could not come to an agreement on an engagement letter with Blue Sky Avgroup and the other plaintiffs was because some of those parties refused to allow an indemnity provision in the engagement agreement. Accordingly, the proposed receivership fell through and **there is currently no receivership in effect over Aircraft Investor Resources LLC or its subsidiaries**.

16. Although Mr. King in this matter and the plaintiff in the Oregon litigation have both represented to the court that there was another global settlement agreement that was put on record at the August 25, 2009 hearing, those contentions are false. Although the parties had been negotiating a tentative settlement agreement prior to and after the August 25, 2009 hearing, the parties were unable to agree on the terms of a final agreement. The disagreement between the parties was argued at length during a September 11, 2009 hearing. At that hearing, the court stated as follows:

> The agreement that you are now trying to shelter under this language [in the Order Appointing Receiver] is not anything that I had before be at the time and was not a basis for the court's order. The only thing before the court in which I concerned with on the 25th was: "Will we or will we not have an agreement that the receiver be appointed, or must we go forward with the evidentiary hearing?"

17. At that hearing on September 11, 2009, that court granted a motion to stay that matter pending this bankruptcy action.

18. Furthermore, the Motion alleges, and contains affidavits that allege, many distasteful items. A close inspection of those items reveals that, virtually entirely, those allegations have to do with Mr. Schrameck, not Debtor *per se*. Until recently, Mr. Schrameck was management of both Debtor and ER1. He no longer has any management responsibilities of Debtor whatsoever, and, on

information and belief, is no longer management at ER1 either. I am investigating these and other allegations, and am considering whether adversarial proceedings should be initiated against Mr. Schrameck.

* * * *

I make the foregoing statements on September 25, 2009, under penalty of perjury that the foregoing is true to the best of my knowledge.

JEFF SANDERS