**David W. Criswell, OSB No. 92593**
dcriswell@balljanik.com
**Justin D. Leonard, OSB No. 03373**
jleonard@balljanik.com
BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, OR  97204
Telephone:  (503) 228-2525
Facsimile:  (503) 295-1058

      Attorneys for Kenneth S. Eiler,
      Chapter 11 Trustee of Aircraft
      Investor Resources, LLC

### UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | Bankruptcy Case No. |
| **Aircraft Investor Resources, LLC**; | 09-38458-rld11  **LEAD CASE** |
| **Epic Air, LLC;** | 09-40041-rld7 |
| **Aircraft Completion Services, LLC;** | 10-30185-rld7 |
| Each a Debtor. | **TRUSTEE'S MOTION FOR ORDERS: (A) AUTHORIZING AND SCHEDULING AN AUCTION TO SOLICIT BIDS FOR THE SALE OF SUBSTANTIALLY ALL ASSETS RELATED TO THE DEBTORS' BUSINESS FREE AND CLEAR OF LIENS, INTERESTS AND ENCUMBRANCES; (B) APPROVING BIDDING PROCEDURES; (C) APPROVING PURCHASE AGREEMENT OR SUBSEQUENT OVERBID; (D) CONFIRMING THE SCHEDULING OF MARCH 30, 2010 HEARING TO CONSIDER APPROVAL OF THE SALE; AND (E)  ESTABLISHING THE FORM AND MANNER OF NOTICES RELATED THERETO** |

**Page 1 -**    **TRUSTEE'S MOTION FOR ORDERS AUTHORIZING AUCTION, APPROVING BIDDING PROCEDURES, APPROVING PURCHASE AGREEMENT OR OVERBID, AND FOR RELATED RELIEF**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

::ODMA\PCDOCS\PORTLAND\695764\3

Aircraft Investor Resources, LLC ("Aircraft Investor"), Epic Air, LLC, and Aircraft Completion Services, LLC (together "AIR" or "Debtor"), by and through Trustee Kenneth Eiler, hereby move the Court (the "Sale Motion") for the entry of orders, pursuant to the provisions of Sections 105, 363 and 365 of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rule 2002-1(b)(2), as follows:  (a) authorizing and scheduling an auction (the "Auction") to sell substantially all of the Debtor's assets (the "Assets") free and clear of liens, interests and encumbrances (the "Sale"); (b) establishing reasonable and necessary bidding procedures in connection with the Sale and the Auction (the "Bidding Procedures"); (c) approving the Sale pursuant to (i) that certain Purchase and Sale Agreement dated as of February 22, 2010, by and among Debtor and Harlow Aerostructures, LLC ("Harlow") (the "Purchase Agreement," a copy of which is attached as Exhibit A) or (ii) a higher and better offer received at the Auction; (d) confirming March 30, 2010 as the final hearing to consider approval of the Sale; and (e)  establishing the form and manner of notices of the Sale, the Auction and the Bidding Procedures.  In support of this Sale Motion, the Trustee respectfully represents as follows:

## I.

### INTRODUCTION

1.      On September 10, 2009, Aircraft Investor filed a petition for relief under Title 11, Chapter 11 of the U.S. Code.  On February 23, 2010, the Bankruptcy Court granted the motion of the Trustee for an order, pursuant to 11 U.S.C. § 105(a), substantively consolidating the estate of Aircraft Investor with (a) the bankruptcy estate of Epic Air, LLC ("Epic Air"), pending before this Court as Case No. 09-40041-rld7; and (b) the bankruptcy estate of Aircraft Completion Services, LLC ("ACS"), pending before this Court as Case No. 10-30185-rld7.

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

::ODMA\PCDOCS\PORTLAND\695764\3

2.     A committee of unsecured creditors has been appointed in this case.  On October 27, 2009, the Court entered an Order approving the appointment of Kenneth Eiler as Chapter 11 Trustee of Aircraft Investor.

3.     This Court has jurisdiction over this Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4.     The statutory predicate for the relief requested herein is 11 U.S.C. §§ 105, 363 and 365.

## II.

## FACTUAL BACKGROUND

5.     AIR is involved in the business of the design, manufacture and assembly of general aviation aircraft.  AIR participates in the experimental aircraft market through the manufacture of airframe kits and assistance of amateur builders in the assembly of aircraft.

6.     AIR carried on its business at a manufacturing facility located at 22590 Nelson Road, Bend, OR 97701 (the "Nelson Road Facility").  AIR owns equipment, furniture and trade fixtures, tooling, molds, plugs, inventory, intellectual property, and miscellaneous intangible and tangible assets used in connection with the operation of its business.

7.     The Purchase Agreement provides that Harlow will purchase substantially all of the assets used in Debtor's business for $2,000,000 (the "Total Purchase Price") in cash payable on closing.  The transferred assets include but are not limited to intellectual property and physical assets and are listed on the Schedule 1.1 to the Purchase Agreement.

8.     The Purchase Agreement excludes certain assets from the sale.  In particular, among other things, the Assets to be acquired by Harlow exclude (a) claims against insiders; (b) avoidance claims; and (c) the other assets listed in Section 2 of the Purchase Agreement.

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

::ODMA\PCDOCS\PORTLAND\695764\3

9.      The obligations of Debtor and Harlow under the Purchase Agreement are conditioned on approval of this Court and various other conditions.

10.     The Purchase Agreement is a complex document and contains many additional provisions, terms and conditions.  The foregoing is merely a summary of certain of the more important provisions and is qualified in its entirety by the Purchase Agreement itself.

## III.

## PROPOSED BIDDING PROCEDURES

11.     The offer of Harlow under the Purchase Agreement is subject to overbids.  The Trustee proposes overbid procedures (the "Bidding Procedures") that are standard for asset sales of this sort.  The proposed Bidding Procedures provide that if Harlow is outbid Harlow will receive a "break-up fee" in an amount (the "Break-Up Fee") equal to the lesser of (a) an amount equal to four percent (4%) of the Total Purchase Price or (b) the aggregate amount of Harlow's actual out-of-pocket costs and expenses (including legal and accounting fees and expenses) incurred in connection with its due diligence investigation of the Debtor, its preparation and negotiation of the Purchase Agreement and all other agreements, documents and instruments required to consummate the transactions contemplated therein.  The Trustee acknowledges and agrees that the obligations of the Debtor to pay the Break-up Fee shall survive the termination of the Purchase Agreement.

12.     The Trustee also proposes the following bidding increments and additional procedures:  The proposed initial minimum overbid/bidding increment is $200,000, with subsequent minimum bid increments of $50,000.  The details of the proposed Bidding Procedures are as follows:

A.      <u>Bids</u>.  Any third party (other than Harlow) that is interested in being a participant in the Auction (defined below) and acquiring all or substantially all of the Assets (each a "Bidder") must submit a "Bid" as provided herein prior to **3:00 p.m. Prevailing Pacific time on Wednesday, March 24, 2010** (the "Bid Deadline"). Any such Bid must:

**Page 4 -    TRUSTEE'S MOTION FOR ORDERS AUTHORIZING AUCTION, APPROVING BIDDING PROCEDURES, APPROVING PURCHASE AGREEMENT OR OVERBID, AND FOR RELATED RELIEF**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

::ODMA\PCDOCS\PORTLAND\695764\3

(1)    Contain a signed definitive asset purchase agreement in substantially the form of the Purchase Agreement (marked to show changes from the Purchase Agreement) with, at a minimum, the following requirements: (i) designating the Assets or other assets of the Debtor to be acquired and having similar terms and conditions as the Purchase Agreement; (ii) provide for a purchase price with respect to the Assets in an amount which is at least $200,000 more than the initial bid offered by Harlow under the Purchase Agreement; (iii) provide that the purchaser thereunder will forfeit the Termination Fee (defined below), as liquidated damages if such purchaser defaults under such purchase agreement; (iv) not be subject to any (a) financing contingency, (b) contingency relating to the completion of unperformed due diligence, (c) contingency relating to the approval of the Bidder's board of directors or other internal approvals or consents, or (d) any conditions precedent to the Bidder's obligation to purchase the Assets other than those included in the Purchase Agreement; and (v) no Bid shall provide for the payment to the Bidder of any breakup fee, topping fee, expense reimbursement or other similar arrangement.

(2)    Include a deposit (the "Sale Deposit") in the form of either a wire transfer to an account specified by the Trustee or a certified check in the amount of $200,000 payable to the order of the Trustee and such deposit shall be held in escrow in a segregated account of the Trustee pending the closing of the asset sale, which amount shall be forfeited as liquidated damages if such Bidder is the Purchaser (defined below) and fails to close the transaction because of a breach or failure to perform on the part of the Purchaser (the "Termination Fee");

(3)    To the extent not previously provided to the Trustee, include an executed confidentiality agreement (in form and substance reasonably satisfactory to the Trustee);

(4)    To the extent not previously provided to the Trustee, be accompanied by evidence satisfactory to the Trustee in his commercially reasonable discretion that Bidder is willing, authorized, capable and qualified financially, legally and otherwise, of unconditionally performing all obligations under the Purchase Agreement in the event that it submits the Prevailing Bid (defined below) at the Auction; and

(5)    Be submitted to counsel for the Trustee so as to be received not later than the Bid Deadline.  Counsel shall, as soon as practicable, send a copy of each Bid received, if any, to the following parties:  (i) counsel to Harlow; (ii) counsel for the creditors committee appointed in this case; and (iii) either counsel to each Bidder submitting a bid, or if a Bidder does not have counsel, to any other Bidder.

**Page 5 -    TRUSTEE'S MOTION FOR ORDERS AUTHORIZING AUCTION, APPROVING BIDDING PROCEDURES, APPROVING PURCHASE AGREEMENT OR OVERBID, AND FOR RELATED RELIEF**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

::ODMA\PCDOCS\PORTLAND\695764\3

B.    Auction.  In the event that the Trustee determines, in his sole reasonable discretion, that a qualifying Bid has been received from a prospective purchaser other than Harlow (a "Qualified Bidder"), then the Trustee will conduct the Auction among Harlow and all Qualified Bidders on **Friday, March 26, 2010 at 10:00 a.m.** with respect to the sale of the Assets at the offices of Ball Janik LLP, 101 SW Main Street, 11th Floor, Portland, OR 97204 or at such other location as may be designated by the Trustee.  The Trustee will provide no less than 24 hours' notice to Harlow and to all Qualified Bidders that the Auction will be held.  All bids must be for cash or cash equivalents acceptable to the Trustee.  The Trustee shall determine the highest and best bid in its sole discretion.  The "Purchaser" shall be the party that submits the highest and best bid at the Auction.  No bids may be received after the announced conclusion of the Auction.  At the Auction, Harlow and Qualified Bidders may submit successive bids in increments of at least $50,000 greater than the prior bid (the "Incremental Bid Amount") for the purchase of all or substantially all of the Assets until there is only one bid that the Trustee determines, in his sole discretion, and subject to Bankruptcy Court approval, is the highest and best bid (the "Prevailing Bid").  If no conforming Bid from a Qualified Bidder shall have been received at or prior to the Bid Deadline, no Auction will be held.  In the event that the Purchaser defaults or fails to close the proposed transactions, then the party who, in the determination of the Trustee, submitted the prior high bid for the Assets shall be deemed to be the Purchaser, and the purchase price shall be the amount of such prior high bid.  Notwithstanding the foregoing, the Trustee may impose such other timing, terms and conditions as he may determine to be in the best interest of the estate, its creditors and other parties in interest; provided such terms and conditions shall not be materially inconsistent with the terms of the Purchase Agreement.

C.    Bankruptcy Court Approval of Sale.  The Trustee and the Purchaser, once the Purchaser has been determined, shall each use their commercially reasonable efforts, and shall cooperate, assist and consult with each other, to secure the entry of an order (the "Sale Approval Order"), which is reasonably acceptable to the Trustee and the Purchaser (it being understood that, pursuant to the Purchase Agreement, the Sale Approval Order will not have required any change to the terms and conditions of the Purchase Agreement other than changes consented to in writing by the Purchaser), of the Bankruptcy Court (i) approving the Purchase Agreement, (ii) authorizing the sale of the Assets pursuant to section 363 of the Bankruptcy Code, free and clear of all liens, claims, interests and encumbrances, and (iii) authorizing the assumption and/or assignment of the executory contracts pursuant to section 365 of the Bankruptcy Code, if any.  In connection with the assumption and/or assignment of the executory contracts pursuant to section 365 of the Bankruptcy Code, the Purchaser shall take all reasonable actions required to provide "adequate assurance of future performance" by the Purchaser after the closing of such sale.  Purchaser shall also be responsible for any and all "cure costs" necessary to assume any such executory contracts.  If for any reason the

Page 6 -    **TRUSTEE'S MOTION FOR ORDERS AUTHORIZING AUCTION, APPROVING BIDDING PROCEDURES, APPROVING PURCHASE AGREEMENT OR OVERBID, AND FOR RELATED RELIEF**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

::ODMA\PCDOCS\PORTLAND\695764\3

Purchaser is unable or unwilling to consummate an approved sale because of breach or failure to perform on the part of the Purchaser, (a) it will forfeit its Termination Fee to the Trustee as liquidated damages in lieu of any other damages with respect to such breach, and (b) the Bidder making the next highest or otherwise best bid shall be deemed to be the Purchaser, the purchase price shall be the amount of such Qualified Bidder's last bid, and the Trustee shall be authorized to effectuate the sale without further order of the Bankruptcy Court.

D.    <u>Hearing on Sale Under Section 363</u>.  The Trustee will present a Sale Approval Order for entry at an evidentiary hearing on March 30, 2010, commencing at 9:30 a.m.

## IV.

## INFORMATION REQUIRED BY LBR 2002-1(2)(A)-(G)

13.    The following information is provided to comply with LBR 2002-1(2)(A)-(G):

(a)    The assets to be sold consist of substantially all of the assets of the Debtor.

(b)    Harlow is the only other party to the proposed transaction at this time. Harlow has no relationship to the Debtor other than as a party to the Purchase Agreement.

(c)    A complete property description may be obtained by contacting the undersigned counsel for the Trustee.

(d)    The terms and conditions of submitting bids, conditions imposed on competing bidders, and the time, place and terms and conditions of the Auction, are set forth below and in the attached Sale Procedures Order.

(e)    The Debtor's Schedules value the Assets at approximately $20,295,000. Except for the marketing efforts undertaken by the Trustee resulting in the Harlow offer, no other valuation of the Assets has been conducted.

(f)    Current estimates are that the sale will result in approximately $2 million in proceeds since the assets are unencumbered.  In addition, the sale is in the best interests of the estate for the following reasons:  (a) the sale will preserve AIR's business enterprise as a going concern, albeit under new ownership; (b) the sale may result in employment for some of the Debtor's former employees; (c) the sale will result in a

**Page 7 -    TRUSTEE'S MOTION FOR ORDERS AUTHORIZING AUCTION, APPROVING BIDDING PROCEDURES, APPROVING PURCHASE AGREEMENT OR OVERBID, AND FOR RELATED RELIEF**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

::ODMA\PCDOCS\PORTLAND\695764\3

greater overall distribution to creditors in general than a piecemeal liquidation; and

(d) the Trustee faces an April 7, 2010 deadline to assume or reject the several leases

pertaining to its Nelson Road, Bend, Oregon facility.

(g)    The Trustee is proposing the sale in advance of approval of a plan of

reorganization because Harlow has indicated that it is unwilling to wait to close the sale

until such time as a plan of reorganization has been confirmed.  In addition, the Trustee

faces an April 7, 2010 deadline to assume or reject the several non-residential real

property leases at its Nelson Road, Bend location.[1]

**V.**

**RELIEF REQUESTED**

14.    By this Motion, the Trustee requests entry of three separate orders.

15.    First, the Trustee seeks entry of an "Order (i) Approving Bidding Procedures in

Connection with the Sale of Assets; (ii) Approving  Breakup Fee; (iii) Authorizing and

Scheduling an Auction on March 26, 2010 in Connection with the Sale; (iv) Confirming March

30, 2010 Hearing for Final Approval of Sale; and (v) Approving Notice of Auction and Sale

Hearing" (the "Sale Procedures Order"), the proposed form of which is annexed hereto as

Exhibit B.  The Trustee proposes that the Sale Procedures Order be entered at the conclusion of

the hearing scheduled on bidding procedures on March 4, 2010, at 2:00 p.m.  Among other

things, the Sale Procedures Order will (i) establish rules pursuant to which prospective bidders

will qualify by demonstrating to the Trustee their financial ability to consummate a transaction

by, inter alia, depositing the sum of $200,000 as an earnest money deposit and submitting an

---

[1]    As set forth in the Trustee's Second Status Report filed January 23, 2010 [Dkt. No. 225], the Trustee
contemplates moving forward along two parallel tracks in this case: (1) a 363 sale and (2) a plan of reorganization.
Previously, the Trustee drafted a plan of reorganization modeled on the term sheet with the LT Builders Group LLC
which was attached to the Second Status report.  The Trustee anticipates receiving comments on such draft plan
shortly and that a plan of reorganization and disclosure statement will likely be filed sometime during the week of
March 1, 2010.  The Trustee contemplates that the Plan terms and feasibility will be considered as an alternative
disposition for the Assets at the hearing scheduled for March 30, 2010.

**Page 8 -    TRUSTEE'S MOTION FOR ORDERS AUTHORIZING AUCTION, APPROVING
BIDDING PROCEDURES, APPROVING PURCHASE AGREEMENT OR
OVERBID, AND FOR RELATED RELIEF**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

::ODMA\PCDOCS\PORTLAND\695764\3

upset bid by March 24, 2010, (ii) schedule an auction for March 26, 2010, (iii) establish rules to govern that auction, (iv) fix March 30, 2010 as the hearing date for the Court to consider the sale of the assets to the party determined to be the winning bidder under these procedures, (v) approve the break-up fee for Harlow described above, and (vi) approve notice procedures related to the entry of the Sale Procedures Order and the scheduling of the auction.  In short, the Trustee seeks a Court order that the bid procedures are reasonable and necessary for the sale process to proceed fairly and effectively.

16.    Second, the Trustee seeks the entry of an "Order Under 11 U.S.C. §§ 105, 363 and 365 Approving (A) Purchase Agreement with Harlow; (B) Sale of Substantially All the Debtor's Assets Related to its Business Free and Clear of All Liens, Claims, Interests and Encumbrances; and (C) Assumption and Assignment of Certain Leases and Executory Contracts" (the "Sale Order"), the proposed form of which is annexed hereto as Exhibit C.  The Trustee requests that the Court enter the Sale Order at the March 30, 2010 hearing.  The form of Sale Order reflects a sale of the Assets to Harlow pursuant to the Purchase Agreement, but the form of the actual Sale Order will be tailored to reflect the outcome of the Auction and the Court's review thereof.  In any event, the Sale Order should contain the basic provisions set forth in Exhibit C concerning approval of the sale and assumption and assignment of the agreements to be transferred to the Purchaser.

17.    Third, the Trustee seeks entry of an order excusing the use of LBF #760.5 given the combined request for approval of detailed bidding and auction procedures and the sale of assets.

## VI.

## ARGUMENT

**A.    Sale of Substantially All of the Debtor's Assets Related to Its Business.**

Section 363 of the Bankruptcy Code provides authority for a trustee "after notice and a

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

::ODMA\PCDOCS\PORTLAND\695764\3

hearing, [to] use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  This provision generally allows a trustee (subject to court approval) to sell property of the estate outside the ordinary course of business where the proposed sale is a sound exercise of the trustee's business judgment and when the sale is proposed in good faith and for fair value.  *Committee of Equity Security Holders v. Lionel Corporation (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Ernst Home Center, Inc.*, 209 B.R. 974, 980 (Bankr. W.D.Wash. 1997).  When a trustee or debtor articulates a reasonable basis for its business decisions, the "court will generally not entertain objections to the debtor's [or trustee's] conduct."  *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).

The authority to sell assets conferred upon a trustee by Section 363(b) "include[s] a sale of substantially all the assets of an estate."  *Otto Preminger Films, Ltd. v. Qintex Entertainment, Inc. (In re Qintex Entertainment, Inc)*, 950 F.2d 1492, 1495 (9th Cir. 1991).  Further, 11 U.S.C. § 105(a) allows the court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."

A bankruptcy court's power to authorize a sale under Section 363(b) is to be exercised at the court's discretion.  *In re WPRV-TV*, 983 F.2d 336, 340 (1st Cir. 1993); *New Haven Radio, Inc. v. Meister (In re Martin-Trigona)*, 760 F.2d 1334, 1346 (2d Cir. 1985); *Lionel*, 722 F.2d at 1069; *Stephens Indus., Inc. v McClung*, 789 F.2d 386, 390-91 (6th Cir. 1986).

Courts in the Ninth Circuit have authorized a sale of all or substantially all of a debtor's assets pursuant to § 363 of the Bankruptcy Code when there is a good business reason for so doing.  *See, e.g., In re American Development Corp.*, 95 B.R. 735, 739 (Bankr. C.D. Cal. 1989) (among the factors that determines whether a good business reason exists is whether the sale is in the best interests of the estate's creditors); *In re Photocopy & Supply, Inc.*, 1994 WL 553065 at * 1 (Bankr. D. Idaho 1994) (a sale of substantially all of the debtor's assets was authorized, in the

**Page 10 -   TRUSTEE'S MOTION FOR ORDERS AUTHORIZING AUCTION, APPROVING BIDDING PROCEDURES, APPROVING PURCHASE AGREEMENT OR OVERBID, AND FOR RELATED RELIEF**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

::ODMA\PCDOCS\PORTLAND\695764\3

absence of a reorganization plan, when justified by a good business reason); *see also In re Martin*, 91 F.3d 395 (3d Cir. 1996); *Lionel*, 722 F.2d at 1071; *In re Titusville Country Club*, 128 B.R. 396 (Bankr. W.D. Pa. 1991).

Courts have also required that the debtor provide reasonable and adequate notice of the sale, that the sale price be fair and reasonable, and that the sale be the result of good faith negotiations with the buyer. *See, e.g., In re Ewell*, 958 F.2d 276 (9th Cir. 1992) (declining to set aside or modify a sale pursuant to 11 U.S.C. § 363 because the price was fair and reasonable and the buyer was a good faith purchaser pursuant to Section 363(m) of the Bankruptcy Code); *In re King-Wilson*, 1998 U.S. Dist. AXIS 16595 at *11-12 (N.D. Cal. Oct. 13, 1998); *In re Canyon Partnership*, 55 B.R. 520 (Bankr. S.D. Cal. 1985); *see also, e.g., In re Abbotts Dairies of Pa.*, 788 F.2d 143, 147-50 (3d Cir. 1986): *In re Tempo Technology Corp.*, 202 B.R. 363, 367 (D. Del. 1996), *aff'd sub nom. Diamond Abrasives Corp. v. Temtechco, Inc. (In re Temtechco, Inc.)*, 141 F.3d 1155 (3d Cir. 1998).

In *Lionel*, the Second Circuit Court of Appeals held that the standard for the proper exercise of the debtor's discretion is a good business reason. *Id.* at 1071. The Second Circuit in *Lionel* adopted, in part, the following criteria for evaluating whether a good business reason exists for authorizing a sale of substantially all of the assets of a debtor:

(1)     the proportionate value of the asset to the estate as a whole;

(2)     the amount of elapsed time since the filing of the petition;

(3)     the likelihood that a plan will be proposed and confirmed in the near future;

(4)     the effect of the proposed disposition on future plans of reorganization; and

(5)     most importantly, whether the assets to be sold are decreasing or increasing in value.

*Id.*[2]

---

[2] Another court has noted that "Factors such as:  1) the proportionate value of the asset to the estate as a whole;
Continued on the next page

**Page 11 -  TRUSTEE'S MOTION FOR ORDERS AUTHORIZING AUCTION, APPROVING BIDDING PROCEDURES, APPROVING PURCHASE AGREEMENT OR OVERBID, AND FOR RELATED RELIEF**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

The Trustee respectfully submits that the proposed sale of substantially all of the Debtor's assets as set forth herein is entirely consistent with the guidelines set forth in *Lionel* and applicable law.  The proposed sale should, therefore, be approved.

The Trustee believes that a prompt sale will maximize the amount that the Debtor, its estate and its creditors may realize for the value of the assets.  The terms and conditions of the Auction and the Bidding Procedures are fair and reasonable and in the best interest of the Debtor, its creditors, and the estate.

Moreover, the Purchase Agreement is the product of substantial good faith, arms'-length negotiations between the Debtor and Harlow.  The price and the form and structure of the agreement proposed by Harlow will continue to be tested in the marketplace.  The Bidding Procedures provide certain protections to Harlow while maximizing the opportunity for competing bids.  Thus, the Trustee is confident that the winning bid that emerges from this process will truly be the highest and best bid obtainable for these assets.

One of the more important factors to be considered in a sale of substantially all of the assets of a debtor under Section 363(b) is whether the value of the debtor's assets will decline.  *In re Lionel Corp.*, 722 F.2d 1063, 1071.  Such consideration is often dispositive.  *In re Boogaart of Florida, Inc.*, 17 B.R. 480, 483-84 (Bankr. S.D. Fla. 1981) ("Where . . . the value of the assets is rapidly decreasing and the estates are suffering continuing losses, liquidation of assets prior to the proposal and confirmation of plans of reorganization may be desirable because it will ultimately increase the amounts distributed to creditors after plans are confirmed.").

The Trustee has been incurring, is incurring, and is projected to continue to incur substantial administrative expenses, including obligations related to its Bend facility.  Delaying a

---

Continued from the previous page

2) the effect of the proposed disposition on future plans of reorganization; 3) which of the alternatives of use, sale or lease the proposal envisions; and 4) the likelihood that a plan of reorganization will be proposed and confirmed in the near future are not significant where it is apparent that the proposed sale will have the effect of a total liquidation of the debtor's assets."  *In re Oneida Lake Development, Inc.*, 114 B.R. 352, 355 (Bankr. N.D.N.Y. 1990).

**Page 12 -   TRUSTEE'S MOTION FOR ORDERS AUTHORIZING AUCTION, APPROVING BIDDING PROCEDURES, APPROVING PURCHASE AGREEMENT OR OVERBID, AND FOR RELATED RELIEF**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

::ODMA\PCDOCS\PORTLAND\695764\3

sale could seriously jeopardize the value of the estate's business and the remaining value for the creditors of the estate.

**B.      Sale Free and Clear**

The Trustee requests authorization to sell the Assets free and clear of liens, interests and encumbrances.  Section 363(f) of the Bankruptcy Code authorizes a debtor in possession to sell property under § 363(b) "free and clear of any interest in such property of an entity other than the estate" if one of the following conditions is satisfied:

(1)      applicable nonbankruptcy law permits the sale of such property free and clear of such interest;

(2)      such entity consents;

(3)      such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)      such interest is bona fide dispute; or

(5)      such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

Applicable case law provides that a sale of a debtor's assets free and clear of liens, interests and encumbrances, with such liens, interests and encumbrances attaching to the net proceeds of the sale, is permissible under § 363(f).  *See, e.g., In re Goffena*, 175 B.R. 386, 387 (Bankr. D. Mont. 1994); *In re Granite Lumber Co.*, 63 B.R. 466, 471 (Bankr. D. Mont. 1986) ("the real and personal property of the Debtor's estate was sold by the Trustee pursuant to Section 363(1) of the Code, free and clear of liens, with valid liens to attach to the proceeds of sale."); *see also, e.g., Folger Adam Security, Inc. v. DeMatteis/MacGregor, J.V.*, 209 F.3d 252, 2.59 (3d Cir. 2000) ("[T]he holdings of the courts suggest that any interest in property that can be reduced to a money satisfaction constitutes a claim for purposes of § 363(f) and, therefore,

**Page 13 -   TRUSTEE'S MOTION FOR ORDERS AUTHORIZING AUCTION, APPROVING BIDDING PROCEDURES, APPROVING PURCHASE AGREEMENT OR OVERBID, AND FOR RELATED RELIEF**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

::ODMA\PCDOCS\PORTLAND\695764\3

attaches to the proceeds of the sale."); *In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988).

There are no liens on the Assets other than personal property tax liens. The sale will also be free and clear of any purported ownership of any insider or others in the intellectual property. Accordingly, the sale may be authorized under § 363(f)(3). In addition, the absence of an objection by holders of claims and interests in the assets to be sold constitutes consent to the sale free and clear of such claims and interests. *See In re Tabone, Inc.*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994); *Veltman v. Whetzal*, 93 F.3d 517 (8th Cir. 1996); 3 Lawrence P. King et al., *Collier on Bankruptcy* § 363.06[3] (15th Ed. Rev.).

## C.    Sale in Good Faith

Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) and (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). While the Bankruptcy Code does not define "good faith," the Ninth Circuit, in *Serzow*, has held that:

> For purposes of § 363(m), a 'good faith purchaser' is one who buys 'in good faith' and 'for value.' This court has said that 'lack of good faith is shown by 'fraud, collusion between the purchaser and the trustee, or an attempt to take grossly unfair advantage of other bidders.'

*In re Serzow*, 1994 U.S. App. LEXIS 16392, at *4_*6 (9th Cir. June 28, 1994) (citations omitted); *In re Ewell*, 958 F.2d 276, 281 (9th Cir. 1992). The Trustee submits, and if necessary will present additional evidence at the sale hearing showing, that the negotiation of the Purchase Agreement was conducted in a fair manner, and that due to the open and competitive nature of

**Page 14 -    TRUSTEE'S MOTION FOR ORDERS AUTHORIZING AUCTION, APPROVING BIDDING PROCEDURES, APPROVING PURCHASE AGREEMENT OR OVERBID, AND FOR RELATED RELIEF**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

the Auction, any asset purchase agreement finalized with another successful bidder will, by definition, be the result of arms'-length negotiations in good faith.

**D.    The Bid Protections**

The Trustee also seeks authority to provide Harlow certain protections provided for in the Sale Procedures Order.  As is common in such sales, Harlow seeks a break-up fee as described above.  Such procedures also protect the Trustee and the estate by avoiding the selection of a bidder that would not be able to close, which would run the risk of losing genuine bids and subjecting the Debtor's business to deterioration.

Courts have often approved bidding procedures, deferring to the debtor's business judgment that such bidding incentives are necessary in order to induce the initial bidder to step forward.  *See, e.g., In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (holding that bidding incentives may be necessary to "convince a white knight to enter the bidding by providing some form of compensation for the risks it is undertaking") (citation omitted).  Even courts that have rejected the "business judgment" test for evaluating break-up fees as a bidding incentive have indicated that bidding incentives would be appropriate where they provide a benefit to the debtor's estate.  *See, e.g., In re O'Brien Environmental Energy, Inc.*, 181 F.3d 527, 533 (3d Cir. 1999) (stating that bidding incentives benefit the estates where they (i) promote "more competitive bidding, such as by inducing a bid that otherwise would not have been made and without which bidding would have been limited," or (ii) induce a bidder to submit a hid that serves as a floor bid "on which other bidders can rely").  One prominent commentator states:

> In general the trustee or debtor in possession, who has a fiduciary duty to represent the estate's interests, should be able to exercise judgment with respect to bidding incentives.  Consequently, although a court should certainly review the trustee's or debtor in possession's agreement to provide bidding incentives, the court should approve such agreements unless they are unreasonable or appear more likely to chill the bidding process than to enhance it.

**Page 15 -  TRUSTEE'S MOTION FOR ORDERS AUTHORIZING AUCTION, APPROVING BIDDING PROCEDURES, APPROVING PURCHASE AGREEMENT OR OVERBID, AND FOR RELATED RELIEF**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

::ODMA\PCDOCS\PORTLAND\695764\3

4 *Collier on Bankruptcy*, ¶ 363.02[7], at 363-22-23 (15th ed. Rev. 2001).

The Trustee submits that the bidding protections here are reasonable and appropriate. Given the material benefits which will inure to the estate, creditors and employees as the result of a going concern sale (as opposed to a liquidation) -- including the establishment of a floor price for the assets to be sold -- the Trustee submits that the bidding protections should be approved.

**E.      Assumption and Assignment of Assumed Contracts**

Section 365 of the Bankruptcy Code authorizes a debtor in possession to assume an executory contract or unexpired lease subject to bankruptcy court approval.  Section 365(b)(1) codifies the requirements for assuming an unexpired lease or executory contract of a debtor, providing that:

> (b)(1)  If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee
>
> > (A)      cures, or provides adequate assurance that the trustee will promptly cure, such default;
> >
> > (B)      compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
> >
> > (C)      provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical pragmatic construction."  *See generally, e.g., In re Great Northwest Recreation Ctr., Inc.*, 74 B.R. 846 (Bankr. D. Mont. 1987); *see also, e.g., Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1988); *In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D.

**Page 16 -   TRUSTEE'S MOTION FOR ORDERS AUTHORIZING AUCTION, APPROVING BIDDING PROCEDURES, APPROVING PURCHASE AGREEMENT OR OVERBID, AND FOR RELATED RELIEF**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

::ODMA\PCDOCS\PORTLAND\695764\3

Ill. 1985) ("[a]lthough no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance.").

The standard that is applied in the Ninth Circuit for determining whether an executory contract or expired lease should be assumed is the debtor's "business judgment" that the assumption is in its economic best interests. *See, e.g., In re G. I. Industries, Inc.*, 204 F.3d 1276, 1282 (9th Cir. 2000) ("a bankruptcy court applies the business judgment rule to evaluate a trustee's rejection decision"); *see also, e.g., Sharon Steel Corp. v. National Fuel Gas Distrib. Corp. (In re Sharon Steel Corp.)*, 872 F.2d 36, 40 (3d Cir. 1989); *In re III Enterprises, Inc. V,* 163 B.R. 453, 469 (Bankr. E.D. Pa. 1994) ("Generally, a court will give great deference to a debtor's decision to assume or reject a contract.  A debtor need only show that its decision to assume or reject the contract is an exercise of sound business judgment—a standard which we have concluded many times is not difficult to meet.") (citations omitted).

Under the Purchase Agreement, the Purchaser will be responsible for any and all "cure" costs under Section 365 of the Code.

## F.     Relief Under Bankruptcy Rule 6004(h) is Appropriate

Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise."  The Trustee requests that any order authorizing it to sell the Assets be effective immediately by providing that the 10-day stay of Bankruptcy Rule 6004(h) will not apply.

The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented.  *See* Advisory Committee Notes to Bankruptcy Rule 6004(h).  Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 10-day stay, *Collier on Bankruptcy* suggests that the 10-day stay period should be eliminated to allow a

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

::ODMA\PCDOCS\PORTLAND\695764\3

sale or other transaction to close immediately "where there has been no objection to the procedure." 10 *Collier on Bankruptcy*, ¶ 6004.10 (15th rev. ed. 2006). *Collier* further suggests that if an objection is overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to seek a stay, unless the court determines that the need to proceed sooner outweighs the interests of the objecting party. *Id.*

The Trustee requests that the Court rule that the 10-day stay period under Bankruptcy Rule 6004(h) not be implemented or, in the alternative, if an objection to the sale is filed, reduce the stay period to the minimum amount of time needed by the objecting party to seek a stay pending appeal.

## VII.

## NOTICE

In accordance with Bankruptcy Rule 2002, the Trustee proposes to give notice of the Auction, this Sale Motion, and the Sale Hearing as follows: (a) serve a copy of this Sale Motion (with exhibits), the Sale Procedures Order and the Purchase Agreement (without the schedules and exhibits thereto) upon (i) all persons or entities required to be served pursuant to orders of this Court; (ii) all parties who to the knowledge of the Trustee presently hold or claim an interest in, a lien upon or security interest in the Assets; (iii) the individuals and entities believed by the Trustee to be potential purchasers; and (iv) the United States Trustee; and (b) serve a copy of a general notice of the relief requested by this Sale Motion, in the form attached to the Sale Procedures Order as Exhibit B (the "Sale Notice"), by first class mail, upon all creditors, all on or before such dates as determined by the Court at the hearing on the Sale Procedures Order.

The Trustee submits that such notice constitutes good and sufficient notice of the competitive offer procedures, the Motion, and all proceedings to be held thereon and that no other or further notice need be given.

**Page 18 -   TRUSTEE'S MOTION FOR ORDERS AUTHORIZING AUCTION, APPROVING BIDDING PROCEDURES, APPROVING PURCHASE AGREEMENT OR OVERBID, AND FOR RELATED RELIEF**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

::ODMA\PCDOCS\PORTLAND\695764\3

# VIII.

# CONCLUSION

Based on the foregoing, the Trustee respectfully submits that the relief requested herein is necessary and appropriate, is in the best interests of the estate, and should be granted in all respects.  The Trustee respectfully requests that the Court enter the proposed orders granting to the Trustee the relief requested herein and such other and further relief as is just and proper.

DATED February 24, 2010                     BALL JANIK LLP


                                            By:  /s/ David W. Criswell
                                              **David W. Criswell, OSB No. 92593**
                                              dcriswell@balljanik.com
                                              **Justin D. Leonard, OSB No. 03373**
                                              jleonard@balljanik.com
                                              101 SW Main Street, Suite 1100
                                              Portland, OR  97204

                                            Attorneys for Kenneth S. Eiler,
                                            Chapter 11 Trustee of Aircraft Investor Resources,
                                            LLC

**Page 19 -   TRUSTEE'S MOTION FOR ORDERS AUTHORIZING AUCTION, APPROVING
           BIDDING PROCEDURES, APPROVING PURCHASE AGREEMENT OR
           OVERBID, AND FOR RELATED RELIEF**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

::ODMA\PCDOCS\PORTLAND\695764\3

ASSET PURCHASE AGREEMENT


BETWEEN


AIRCRAFT INVESTOR RESOURCES, LLC; EPIC AIR, LLC;
AND AIRCRAFT COMPLETION SERVICES, LLC
AS SELLER


AND


HARLOW AEROSTRUCTURES LLC
AS BUYER


FEBRUARY 22, 2010

LA1933271.2
209401-10001

## ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT (this "**Agreement**"), dated as of February 22, 2010, is among Aircraft Investor Resources, LLC, a Nevada limited liability company ("**AIR**"), Epic Air, LLC, a Delaware limited liability company ("**Epic**"), Aircraft Completion Services, LLC, a Delaware limited liability company ("**ACS**"), and Harlow Aerostructures LLC, a Kansas limited liability company, or its affiliated nominee (the "**Buyer**").

## RECITALS

A.    AIR is involved in the business of the design, manufacture and assembly of general aviation aircraft. AIR participates in the experimental aircraft market through its subsidiary Epic, which manufactures airframe kits, and ACS, which assists amateur builders in the assembly of aircraft. The aviation business generally carried on by AIR, Epic and ACS will be collectively referred to as the "**Business**". AIR, Epic and ACS will be collectively referred to as the "**Seller**".

B.    The Seller carried on the Business at a manufacturing facility located at 22590 Nelson Road, Bend, OR 97701 ("the "**Nelson Road Facility**"). The Seller owns equipment, furniture and trade fixtures, tooling, molds, plugs, inventory, intellectual property, and miscellaneous intangible and tangible assets used in connection with the operation of the Business.

C.    On September 10, 2009, AIR filed a voluntarily petition in bankruptcy under Chapter 11 in the United States Bankruptcy Court for the District of Nevada. Venue for the case was subsequently transferred to the District of Oregon, where the case is currently pending as No. 09-38458-rld11 ("**AIR Bankruptcy Case**").

D.    On October 16, 2009, ACS filed a voluntary petition in bankruptcy under Chapter 7 in the United States Bankruptcy Court for the District of Nevada. Venue for the case was subsequently transferred to the District of Oregon, where the case is currently pending as No. 10-31085-rld7 ("**ACS Bankruptcy Case**").

E.    On October 23, 2009, Epic filed a voluntary petition in bankruptcy under Chapter 7 in the United States Bankruptcy Court for the District of Delaware. Venue for the case was subsequently transferred to the District of Oregon, where the case is currently pending as No. 09-40041-rld7 ("**Epic Bankruptcy Case**").

F.    Pursuant to the AIR Bankruptcy Case, a Chapter 11 trustee has been appointed (the "**AIR Trustee**"). The AIR Trustee has filed a motion to consolidate the Epic Bankruptcy Case and the ACS Bankruptcy Case with the AIR Bankruptcy Case so as to substantively consolidate all three bankruptcy cases.

G.    At the time of filing of the AIR Bankruptcy Case, certain aircraft owned by amateur builders were in various stages of construction at the Nelson Road Facility. Some of the

partially completed aircraft remain at the Nelson Road Facility. Such partially completed aircraft, owned by amateur builders, will be referred to as "**WIP**".

H.     The Trustee and LT Builders Group, LLC have entered into a term sheet dated January 6, 2010 regarding the filing of a reorganization plan providing for the purchase of AIR and the provision of interim financing (the "**LT Builder's Offer**"). This Agreement is a competing offer to the LT Builder's Offer and any other third party offers for the purchase of all or part of the Business.

I.     The Buyer desires to acquire substantially all the assets used or useful, or intended to be used, in the operation of the Seller's Business, and the Seller desires to sell such assets to the Buyer. The Buyer intends to acquire the assets through a purchase under Section 363(f) of the United States Bankruptcy Code, free and clear of any interest in such property of an entity other than the bankrupt estate.

## AGREEMENT

The parties agree as follows:

## SECTION 1.  ASSETS PURCHASED; NO LIABILITIES ASSUMED

**1.1**     **Assets Purchased**. The Seller agrees to sell to the Buyer and the Buyer agrees to purchase from the Seller, on the terms and conditions set forth in this Agreement, the assets described on **Schedule 1.1** attached hereto and incorporated herein (the "**Assets**").

**1.2**     **No Liabilities Assumed**. The Buyer will not assume and will not be liable for any liabilities of the Seller, known or unknown, contingent or absolute, accrued or other, and the Assets will be free of all liabilities, obligations, liens, and encumbrances. Without limiting the generality of the foregoing and except as otherwise provided above, the Buyer will not be responsible for any of the following:

(a)     Liabilities, obligations, or debts of the Seller, whether fixed, contingent, or mixed and whether based on events occurring before or after the Closing, including without limitation those based on tort, contract, statutory, or other claims or involving fines or penalties payable to any governmental authority;

(b)     Liabilities, obligations, or debts of the Seller for any federal, state, or local tax, penalty, fee, interest, assessment or any other related types of charges or obligations, including without limitation federal income taxes, penalties or fees, state income and excise taxes, penalties or fees, state and local real and personal property taxes, penalties or fees, and federal, state, and local withholding and payroll taxes, penalties or fees;

(c)     Liabilities or obligations of the Seller to employees for salaries, bonuses, or health and welfare benefits or with respect to any profit-sharing, stock bonus, pension, retirement, stock purchase, option, bonus, or deferred compensation plan or for any other benefits or

2

compensation (including without limitation accrued vacation, severance or termination payment);

(d)     Liabilities or obligations of Seller (including any entity in which Seller is a member or shareholder) under that certain lease agreement with ER1, LLC relating to the Nelson Road Facility or that certain Ground Lease with the City of Bend on which the Nelson Road Facility is sited.

(e)     Liabilities or obligations associated with any aircraft or aircraft components manufactured by Seller or any liability or obligation associated with completion assistance provided to any amateur builder.

## SECTION 2.  EXCLUDED ASSETS

Excluded from this sale and purchase are the following:

**2.1     Claims Against AIR Members or ER1, LLC**. Except as set forth in clause (n) of Schedule 1.1, the Assets do not include, and the Seller specifically retains, any and all claims, demands or causes of action of any kind, known and unknown, under any legal theory, that Seller may have against (i) any of the members of AIR, Epic or ACS, or the members, officers, trustees, employees, or agents of such members, or their spouses, or any entity affiliated with such member; or (ii) ER1, LLC, or its members, officers, employees or agents, arising out of or resulting from any fact, circumstance or event occurring prior to the Closing; provided, however, that if any such fact, circumstance or event continues after the Closing, then any claim, demand or cause of action arising out of or resulting from the continuity or occurrence of such fact, circumstance or event after the Closing shall not be excluded from the sale and purchase of the Assets hereunder.

**2.2     Farnborough Joint Venture**. Except as set forth in clause (j) of Schedule 1.1, the Assets do not include, and Seller specifically retains, the interest of the Seller in the joint venture or co-development arrangement with Farnborough Aircraft Corporation, Limited.

**2.3     Nelson Road Facility**.  The Assets do not include any leasehold or other possessory rights to the Nelson Road Facility, and Buyer shall be solely responsible, at Buyer's expense, for negotiating a lease for ongoing use of the Nelson Road Facility or removing the Assets from the Nelson Road Facility upon Closing.

## SECTION 3.  ALLOCATION OF PURCHASE PRICE

The Purchase Price will be allocated among the Assets in accordance with Schedule 3. Schedule 3 shall be prepared by the Buyer and shall be subject to the Seller's approval, which approval shall not be unreasonably withheld by Seller.  The Buyer and the Seller will be bound by the allocation set forth in Schedule 3 in reporting the transactions contemplated by this Agreement to any governmental authority (including without limitation the Internal Revenue Service).

## SECTION 4.  PURCHASE PRICE

**4.1    Purchase Price.** The purchase price for the Assets (the "**Total Purchase Price**") will be the sum of TWO MILLION US DOLLARS (USD $2,000,000).

## SECTION 5.  PAYMENT OF PURCHASE PRICE

The Total Purchase Price will be payable as follows:

**5.1    Earnest Money**. The Earnest Money Deposit (as defined below) will be made as provided for in Section 5.3 and will be applied to the Total Purchase Price at Closing.

**5.2    Remaining Balance**. The remaining balance of the Total Purchase Price will be paid in cash at Closing.

**5.3    Earnest Money**.  Within three (3) business days of the execution and delivery of this Agreement by Buyer and Seller, Buyer shall deliver by wire transfer to the law firm representing the AIR Trustee, to be held in such firm's client trust account, as a deposit and partial payment for the Assets, the sum of Fifty Thousand US Dollars (USD $50,000.00) ("**Earnest Money Deposit**").  Buyer acknowledges that such law firm does not represent Buyer and is not acting in the capacity as a neutral escrow agent (but solely as the AIR Trustee's agent) in connection with the receipt of such Earnest Money Deposit.

**5.4    Return of Earnest Money Deposit**. The Earnest Money Deposit will be promptly returned to Buyer upon the earlier to occur of the following: (i) if the Closing has not occurred by April 1, 2010 and the failure to close is not due to the breach of this Agreement by Buyer, (ii) if the transaction contemplated by this Agreement is not approved in the AIR Bankruptcy Case, the Epic Bankruptcy Case and the ACS Bankruptcy Case, or the consolidated case; or (iii) written notice from Buyer to Seller that a condition precedent to Buyer's obligations is not met and the Buyer in good faith determines that it will not or cannot be timely satisfied.

## SECTION 6.  OTHER AGREEMENTS

At the Closing, one or more of the parties will execute the following additional agreements (the "**Related Agreements**"):    The Bill of Sale, substantially in the form attached as **Exhibit A**.

## SECTION 7.  SELLER'S REPRESENTATIONS AND WARRANTIES

Subject to, and except as disclosed by the Seller in the Schedule of Exceptions in a numbered paragraph that corresponds to the section for which disclosure is made, the Seller represents and warrants to the Buyer as follows:

**7.1    Valid Organization.** Each of AIR, Epic and ACS are limited liability companies duly organized under the laws of the state of their organization.

**7.2    Authorization.** The execution, delivery, and performance of this Agreement and all other agreements contemplated by this Agreement to which the AIR, Epic and ACS is a party have been duly authorized and approved. This Agreement and the Related Agreements, when executed and delivered by the parties thereto, will constitute the legal, valid, and binding obligation of each of AIR, Epic and ACS, as the case may be, enforceable against AIR, Epic and ACS, as the case may be, in accordance with their respective terms except as the enforceability thereof may be limited by the application of bankruptcy, insolvency, moratorium, or similar laws affecting the rights of creditors generally or judicial limits on the right of specific performance. Except as set forth on the Schedule of Exceptions and contingent upon approval of the transaction contemplated by this Agreement in the AIR Bankruptcy Case, the Epic Bankruptcy Case and the ACS Bankruptcy Case, or the consolidated case, the execution and delivery by each of AIR, Epic and ACS of this Agreement and the Related Agreements to which any of such entities are parties, and the fulfillment of and compliance with the respective terms hereof and thereof by the Seller, do not and will not (a) conflict with or result in a breach of the terms, conditions, or provisions of, or constitute a default under, any contract to which AIR, Epic or ACS is a party, (b) result in the creation of any lien, security interest, charge, or encumbrance on the Assets, (c) result in a violation of the charter or bylaws of any of AIR, Epic or ACS or any law, statute, rule, or regulation to which any of AIR, Epic or ACS is subject, or any order, judgment, or decree to which any of AIR, Epic or ACS is subject, or (d) require any authorization, consent, approval, exemption, or other action by or notice to any court or administrative or governmental body.

**7.3    Brokers and Finders.** The Seller has not employed any broker or finder in connection with the transactions contemplated by this Agreement, or taken action that would give rise to a valid claim against any party for a brokerage commission, finder's fee, or other like payment.

**7.4    Transfer Not Subject to Encumbrances or Third-Party Approval.** Except for approval of the court in the AIR Bankruptcy Case, the Epic Bankruptcy Case and the ACS Bankruptcy Case, or the consolidated case, the execution and delivery of this Agreement and the Related Agreements by the Seller, and the consummation of the contemplated transactions, will not result in the creation or imposition of any valid lien, charge, or encumbrance on any of the Assets, and will not require the authorization, consent, or approval of any third party, including any governmental subdivision or regulatory agency.

**7.5    Intellectual Property.** The Seller owns all its intellectual property set forth in Schedule 1.1 ("**Intellectual Property**") free and clear of all liens, claims, and encumbrances. To the extent that there is any claim that Intellectual Property is owned, or claimed to be owned, by (i) any of the members of AIR, Epic or ACS, or the members, officers, trustees, employees, or agents of such members, or their spouses, or any entity affiliated with such member, including without limitation Rick Schramek, Annette Elder, Quick-Turn Technologies, LLC, Quick-Turn Aerospace, LLC, or (ii) any employee, contractor, consultant or partner of AIR, Epic or ACS, including without limitation any joint venture partner or co-developer, Buyer will acquire the Intellectual Property free and clear of any such interests or claims of ownership under Section 363 of the United States Bankruptcy Code. To the Seller's knowledge, the Seller's use of its

5

Intellectual Property does not create any conflict with or infringe on any rights of any other person and no claims of conflict or infringement have been asserted against the Seller.

**7.6    Title to and Condition of Assets.**

       **7.6.1**    The Seller owns (and at Closing the Buyer will acquire) all the Assets free and clear of all mortgages, pledges, security interests, options, claims, charges, or other encumbrances or restrictions of any kind.

       **7.6.2**    The Seller has (and at Closing the Buyer will acquire) good and marketable title to the Assets.

       **7.7    Accuracy of Representations and Warranties.** None of the representations or warranties of the Seller contain or will contain any untrue statement of a material fact or omit or will omit or misstate a material fact necessary in order to make statements in this Agreement not misleading.

## SECTION 8.  REPRESENTATIONS OF BUYER

       The Buyer represents and warrants to the Seller as follows:

       **8.1    Corporate Existence.** The Buyer is a limited liability company duly organized and legally existing under the laws of the state of Kansas. The Buyer has all requisite corporate or individual power and authority to enter into this Agreement and the Related Agreements and to perform its obligations under them.

       **8.2    Authorization.** The execution, delivery, and performance of this Agreement and the Related Agreements have been duly authorized and approved by the Buyer. This Agreement and the Related Agreements constitute valid and binding agreements of the Buyer, enforceable in accordance with their terms, except as enforceability may be limited by bankruptcy, reorganization, insolvency, or similar laws affecting the enforcement of creditors' rights or by the application of general principles of equity.

       **8.3    Brokers and Finders.** Buyer has not employed any broker or finder in connection with the transactions contemplated by this Agreement and has taken no action that would give rise to a valid claim against any party for a brokerage commission, finder's fee, or other like payment.

       **8.4    No Conflict with Other Instruments or Agreements.** The execution, delivery, and performance by the Buyer of this Agreement and the Related Agreements will not result in a breach or violation of, or constitute a default under, the Buyer's Articles of Incorporation or Bylaws or any material agreement to which the Buyer is a party or by which the Buyer is bound.

       **8.5    No Governmental Consent or Violation of Laws.** No consent or approval of, notice to, or filing with any governmental authority is required to be made by Buyer in order to permit Buyer to lawfully purchase the Assets, and Buyer's execution of this Agreement and

acquisition of the Assets will not result in a violation of any federal, state or local laws, rules or regulations applicable to Buyer.

**8.6    Patriot Act Compliance.**

     **8.6.1**    Neither Buyer nor, to Buyer's knowledge, its affiliates, (A) is in violation of any laws relating to terrorism or money laundering or the Uniting and Strengthening America by Proving Appropriate Tools Required to Intercept and Obstruct Terrorism Action of 2001, Public Law 107-56 or Executive Order No. 13224 (Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism) (the "<u>Executive Order</u>") (collectively, the "<u>Anti-Money Laundering and Anti-Terrorism Laws</u>"); (B) is or has, directly or indirectly, acted on behalf of terrorists, terrorist organizations or narcotics traffickers, including those persons or entities that appear on the Annex to the Executive Order, or are included on any relevant lists maintained by the Office of Foreign Assets Control of U.S. Department of Treasury, U.S. Department of State, or other U.S. government agencies, all as may be amended from time to time; or (C) in any capacity in connection with the purchase of the Property (1) conducts any business or engages in making or receiving any contribution of funds, goods or services to or for the benefit of any person included in the lists set forth in the preceding clause (B); (2) deals in, or otherwise engages in any transaction relating to any property or interests in property blocked pursuant to the Executive Order; or (3) engages in or conspires to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in any Anti-Money Laundering and Anti-Terrorism Laws.

     **8.6.2**    Buyer understands and acknowledges that Seller may become subject to further anti-money laundering regulations, and agrees, at Seller's sole cost and expense, to cooperate reasonably to execute instruments, provide information, and perform any other acts as may reasonably be requested by Seller, for the purpose of: (A) carrying out due diligence as may be required by Applicable Law to establish Buyer's identity and source of funds; (B) maintaining records of such identities and sources of funds, or verifications or certifications as to the same; and (C) taking any other actions as may be required to comply with and remain in compliance with all Anti-Money Laundering and Anti-Terrorism laws and regulations applicable to Seller and Buyer;  provided however, that Buyer shall not disclose the name of its limited partners.

     **8.6.3**    Neither Buyer, nor any person controlling or controlled by Buyer, is a country, a territory, individual or entity named on a Government List, and the monies used in connection with this Agreement and amounts committed with respect thereto, were not and are not derived from any activities that contravene any applicable Anti-Money Laundering and Anti-Terrorism Laws or anti-bribery laws and regulations (including funds being derived from any person, entity, country or territory on a Government List or engaged in any unlawful activity defined under Title 18 of the United States Code, Section 1956(c)(7)).  For purposes of this paragraph "Government List" means any of (A) the two lists maintained by the United States Department of Commerce (Denied Persons and Entities), (B) the list maintained by the United States Department of Treasury (Specially Designated Nationals and Blocked Persons), and

(C) the two lists maintained by the United States Department of State (Terrorist Organizations and Debarred Parties).

**8.7    As-Is Purchase of Assets.  Buyer has entered into this Agreement on the basis of its own examination, personal knowledge, and opinion of the value of the Assets, and Buyer has not relied on any representations made by Seller other than those specified in this Agreement.  Buyer is acquiring the Assets in their "AS-IS, WHERE-IS" condition without any implied or express representation or warranty of any kind.**

**8.8    Accuracy of Representations and Warranties.** None of the representations or warranties of the Buyer contain or will contain any untrue statement of a material fact or omit or will omit or misstate a material fact necessary in order to make the statements contained herein not misleading.

## SECTION 9.  COVENANTS OF SELLER

**9.1    Access to Premises and Information.** At reasonable times before the Closing, the Seller will provide the Buyer and its representatives with reasonable access during business hours to the assets, titles, contracts, and records of the Seller  and furnish such additional information concerning the Business as the Buyer from time to time may reasonably request (to the extent such items and/or information are in the custody or control of the AIR Trustee or its agents).

**9.2    Change of Name.** At or after the Closing, upon the request of the Buyer, the Seller will take all action necessary or appropriate to permit the Buyer to legally commence using the name "Epic" and "Aircraft Completion Services", and if required will change the names of Epic Air, LLC and Aircraft Completion Services, LLC and document such changes with the Secretary of State's office in Delaware and Oregon.

**9.3    Commercially Reasonable Efforts.** The Seller will use commercially reasonable efforts to effectuate the transactions contemplated by this Agreement and the Related Agreements and to fulfill all the conditions of their obligations under this Agreement and the Related Agreements, and will do all commercially reasonable acts and things as may be required to carry out their respective obligations under this Agreement and the Related Agreements, provided, however, that the Buyer understands and acknowledges that the LT Builder's Offer has been made and the Seller may consider and pursue that offer, and that under the requirements of the AIR Bankruptcy Case, the Epic Bankruptcy Case and the ACS Bankruptcy Case, or the consolidated case, the Seller and the AIR Trustee may be required to consider and address other competing offers. The Seller, through the AIR Trustee, agrees to submit a motion submitting this Agreement for approval under Section 363(f) of the United States Bankruptcy Code.

**9.4    Expense Reimbursement.**  In the event the transaction contemplated by this Agreement is terminated for any reason other than a material breach of the terms of this Agreement by the Buyer, then the Seller will pay to the Buyer, in addition to the return of the Earnest Money Deposit, no later than three (3) business days after the date of such termination, as a "break-up fee" an amount (the "**Break-Up Fee**") equal to the lesser of (a) an amount equal

to four percent (4%) of the Total Purchase Price and (b) the aggregate amount of the Buyer's actual out-of-pocket costs and expenses (including legal and accounting fees and expenses) incurred in connection with its due diligence investigation of the Seller, its preparation and negotiation of this Agreement and all other agreements, documents and instruments required to consummate the transactions contemplated herein.  The Seller shall pay the Break-Up Fee by wire transfer of immediately available funds to a bank account designated in writing by the Buyer, and the Seller expressly acknowledges and agrees that the obligations of the Seller to pay the Break-up Fee shall survive the termination of this Agreement. Seller agrees to cause the AIR Trustee to seek approval of this fee as an administrative expense.

## SECTION 10.        COVENANTS OF BUYER

**10.1    Commercially Reasonable Efforts.** The Buyer will use commercially reasonable efforts to effectuate the transactions contemplated by this Agreement and the Related Agreements and to fulfill all the conditions of the Buyer's obligations under this Agreement and the Related Agreements, and will do all commercially reasonable acts and things as may be required to carry out the Buyer's obligations and to consummate this Agreement and the Related Agreements.

## SECTION 11.        CONDITIONS PRECEDENT TO BUYER'S OBLIGATIONS

The obligation of the Buyer to purchase the Assets is subject to the fulfillment, before or at the Closing, of each of the following conditions:

**11.1    Representations, Warranties, and Covenants of Seller.** All representations and warranties made in this Agreement by the Seller will be true in all material respects as of the Closing and the Seller will not have violated or will not have failed to perform in accordance with any covenant contained in this Agreement or the Related Agreements.

**11.2    Licenses and Permits.** The Buyer will have obtained all licenses and permits from public authorities necessary to authorize the ownership and operation of a business using the Assets.

**11.3    Substantive Consolidation**. The Epic Bankruptcy Case and the ACS Bankruptcy Case shall have been substantively consolidated with the AIR Bankruptcy Case.

**11.4    Consent in the AIR Bankruptcy Case.** The Seller will have obtained approval of the consummation of the transaction contemplated by this Agreement in the AIR Bankruptcy Case as a Section 363(f) sale, and such approval will not have required any change to the terms and conditions of this Agreement other than changes consented to in writing by the Buyer.

**11.5    Buyer's Inspection of Assets**. The Buyer will have inspected the Assets on or before the Closing Date and be satisfied, in the exercise of its sole and absolute discretion, that all tangible Assets owned by the Seller are complete, at the Nelson Road Facility and are in good condition.

The conditions set forth in this Section 11 are solely for the benefit of the Buyer and may be waived only by the Buyer.  A waiver by the Buyer of any condition shall not relieve the Seller of any liability or obligation with respect to any representation, warranty, covenant or agreement of the Seller.  Neither the Seller nor the Buyer will fail to act for the purpose of permitting or causing any condition to fail (except to the extent the Buyer, in its sole and absolute discretion, exercises its right to disapprove any items or matters).

## SECTION 12.        CONDITIONS PRECEDENT TO OBLIGATIONS OF SELLER

The obligations of the Seller to consummate the transactions contemplated by this Agreement and the Related Agreements are subject to the fulfillment, before or at the Closing, of each of the following conditions:

**12.1    Representation, Warranties, and Covenants of Buyer.** All representations and warranties made in this Agreement by the Buyer will be true in all material respects as of the Closing, and the Buyer will have neither violated nor failed to perform in accordance with any covenant contained in this Agreement or the Related Agreements.

**12.2    No Proceeding or Litigation.** No action, suit, or proceeding before any court or any governmental or regulatory authority will have been commenced and be continuing, and no investigation by any governmental or regulatory authority will have been commenced and be continuing, and no action, investigation, suit, or proceeding will be threatened at the time of the Closing, against the Seller or the Buyer or any of their affiliates, associates, officers, or directors, seeking to restrain or prevent questioning the validity of the transactions contemplated by this Agreement or the Related Agreements.

**12.3    Substantive Consolidation**. The Epic Bankruptcy Case and the ACS Bankruptcy Case shall have been substantively consolidated with the AIR Bankruptcy Case.

**12.4    Consent in the AIR Bankruptcy Case**. The Seller will have obtained approval of the consummation of the transaction contemplated by this Agreement in the AIR Bankruptcy Case as a Section 363(f) sale, and such approval will not have required any change to the terms and conditions of this Agreement.

The conditions set forth in this Section 12 are solely for the benefit of the Seller and may be waived only by the Seller. A waiver by the Seller of any condition shall not relieve the Buyer of any liability or obligation with respect to any representation, warranty, covenant or agreement of the Buyer.  Neither the Seller nor the Buyer will fail to act for the purpose of permitting or causing any condition to fail.

## SECTION 13.        INDEMNIFICATION AND SURVIVAL

**13.1    Survival of Representations and Warranties.** All representations and warranties made in this Agreement will survive the Closing of this Agreement. The representations and warranties in this Agreement will terminate two (2) years after the Closing, and such representations or warranties will thereafter be without force or effect, except for any

claim with respect to which notice has been given to the potentially indemnifying party before such expiration date.

**13.2     Seller's Indemnification.**

**13.2.1** The Seller hereby agrees to indemnify, defend, and hold the Buyer, its successors, and assigns harmless from and against any and all claims, liabilities, obligations, costs, and expenses, including reasonable attorney fees, (collectively, "**Damages**") arising out of or related to:

(a)     Any breach or inaccuracy of any representation or warranty of the Seller made in this Agreement or any Related Agreement; and

(b)     Any failure by the Seller to perform any covenant required to be performed by it pursuant to this Agreement or any Related Agreement.

**13.2.2**  If any claim is asserted against the Buyer that would give rise to a claim by the Buyer against the Seller for indemnification under Section 13.2, then the Buyer will promptly give written notice to the Seller concerning such claim and the Seller will, at no expense to the Buyer, defend the claim.

**13.3     Buyer's Indemnification.** The Buyer agrees to defend, indemnify, and hold harmless the Seller from and against all Damages arising out of or related to:

(a)     Any breach or inaccuracy of any representation or warranty of the Buyer made in this Agreement; and

(b)     Any failure by the Buyer to perform any covenant required to be performed by it pursuant to this Agreement.

**SECTION 14.          CLOSING**

**14.1     Time and Place.** This Agreement will be closed at the offices of Ball Janik LLP, at 101 SW Main, Ste. 1100, Portland, OR  97204, within ten (10) business days after approval of the consummation of the transaction contemplated by this Agreement in the AIR Bankruptcy Case as a Section 363(f) sale, or at such other time as the parties may agree in writing (the "**Closing**").

**14.2     Obligations of Seller at Closing.** At the Closing, the Seller will deliver to the Buyer the following:

(a)     Bills of sale, assignments, properly endorsed certificates of title, and other instruments of transfer, in form and substance reasonably satisfactory to counsel for the Buyer, necessary to transfer and convey all of the Assets to the Buyer;

(b)     Possession of the Assets; and

(c)     Such other certificates and documents as may be called for by the provisions of this Agreement.

**14.3    Buyer's Obligations at Closing.** At the Closing, the Buyer will deliver to the AIR Trustee the following:

(a)     A cashier's check, certified check, or wire transfer in the amount of the remaining balance of the Total Purchase Price specified in Section 4.1; and

(b)     Such other certificates and documents as may be called for by the provisions of this Agreement.

## SECTION 15.          TERMINATION OF AGREEMENT

**15.1    Right of Parties to Terminate.**

**15.1.1**  This Agreement may be terminated by the Buyer, by written notice to the Seller, if:

(a)     Any of the conditions set forth in Section 11 have not been fulfilled or waived in writing by Buyer; or

(b)     The Seller breaches any of its obligations under this Agreement in any material respect.

**15.1.2** This Agreement may be terminated by the Seller, by written notice to the Buyer, if:

(a)     Any of the conditions set forth in Section 12 have not been fulfilled or waived in writing by Buyer; or

(b)     The Buyer breaches any of its obligations under this Agreement in any material respect.

**15.1.3**  This Agreement may be terminated by the Buyer, by written notice to the Seller, if the Closing fails to occur on or before April 1, 2010; however, the right of the Buyer to terminate this Agreement under this Section 15.1.3 will not be available if the Buyer's failure to fulfill or perform any obligation under this Agreement has been the cause of, or resulted in, the failure of the Closing to occur on or before such date.

**15.1.4**  This Agreement may be terminated by the Buyer or the Seller, by written notice to the other, if, at or prior to the Bankruptcy Court hearing approving the sale of the Assets in accordance with the terms of this Agreement, an alternative bid for the purchase of the Assets, or the competing LT Builder's Offer, is accepted or approved by the Bankruptcy Court.

**15.2    Effect of Termination.** If either the Buyer or the Seller decides to terminate this Agreement pursuant to Section 15.1, such party will promptly give written notice to the other party to this Agreement of such decision. In the event of a termination of this Agreement, the parties to this Agreement will be released from all liabilities and obligations arising under this Agreement with respect to the matters contemplated by this Agreement, other than (i) for damages arising from a breach of this Agreement; (ii) the obligation to return the Earnest Money Deposit, under the terms described in Section 5.4; and (ii) liability for the expense reimbursement under the terms described in Section 9.4.

## SECTION 16.        MISCELLANEOUS PROVISIONS

**16.1 Assignment; Binding Effect**. Buyer may not assign this Agreement without Seller's prior written consent.  Notwithstanding the foregoing, Buyer may contemplate assigning its interest in this Agreement to one or more affiliated entities, and Seller will not unreasonably withhold consent to any such assignment(s) so long as Buyer's affiliated assignee(s) assume in writing Buyer's obligations hereunder, including, without limitation, the representations and warranties of Buyer herein.  No assignment shall release Buyer of its obligations or liabilities under this Agreement. This Agreement will be binding on and inure to the benefit of the parties and their respective successors, and permitted assigns.

**16.2 No Third-Party Beneficiaries**. Nothing in this Agreement, express or implied, is intended or will be construed to confer on any person, other than the parties to this Agreement, any right, remedy, or claim under or with respect to this Agreement.

**16.3 Notices**. All notices and other communications under this Agreement must be in writing and will be deemed to have been given if delivered personally, mailed by certified mail, or delivered by an overnight delivery service (with confirmation) to the parties at the following addresses (or at such other address as a party may designate by like notice to the other party):

|  |  |
|---|---|
| To Seller: | Kenneth S. Eiler PC |
|  | Chapter 11 Trustee |
|  | PMB 810 |
|  | 515 NW Saltzman Rd. |
|  | Portland, OR. 97229 |
| With a copy to: | David Criswell |
|  | Ball Janik LLP |
|  | 101 SW Main, Ste. 1100 |
|  | Portland, OR  97204 |
| To Buyer: | Phillip C. Friedman |
|  | Harlow Aerostructures LLC |
|  | 1501 South McLean Boulevard |
|  | Wichita, KS  67213 |
| With a Copy to: | Kenneth R. Benbassat |

Loeb & Loeb LLP
10100 Santa Monica Boulevard, Suite 2200
Los Angeles, CA  90067

Any notice or other communication will be deemed to be given (a) on the date of personal delivery, (b) at the expiration of the 3rd day after the date of deposit in the United States mail, or (c) on the date of confirmed delivery by overnight delivery service.

**16.4 Amendments**. This Agreement may be amended only by an instrument in writing executed by all the parties, which writing must refer to this Agreement.

**16.5 Construction**. The captions used in this Agreement are provided for convenience only and will not affect the meaning or interpretation of any provision of this Agreement. All references in this Agreement to "Section" or "Sections" without additional identification refer to the Section or Sections of this Agreement. All words used in this Agreement will be construed to be of such gender or number as the circumstances require. Whenever the words include or including are used in this Agreement, they will be deemed to be followed by the words without limitation.

**16.6 Counterparts**. This Agreement may be executed in counterparts, each of which will be considered an original and all of which together will constitute one and the same agreement.

**16.7 Scanned or Facsimile Signatures**. Facsimile transmission or electronic transmission of a scan of any signed original document, and retransmission of any signed facsimile transmission or electronic transmission of a scan, will be the same as delivery of an original. At the request of any party, the parties will confirm facsimile or electronically transmitted signatures by signing an original document.

**16.8 Further Assurances**. Each party agrees (a) to execute and deliver such other documents and (b) to do and perform such other acts and things, as any other party may reasonably request, to carry out the intent and accomplish the purposes of this Agreement.

**16.9 Time of Essence**. Time is of the essence with respect to all dates and time periods set forth or referred to in this Agreement.

**16.10 Expenses**. Except as provided in Section 9.4, each party to this Agreement will bear the party's own expenses in connection with the preparation, execution, and performance of this Agreement and the transactions contemplated by this Agreement.

**16.11 Waiver**. Any provision or condition of this Agreement may be waived at any time, in writing, by the party entitled to the benefit of such provision or condition. Waiver of any breach of any provision will not be a waiver of any succeeding breach of the provision or a waiver of the provision itself or any other provision.

**16.12 Governing Law**. This Agreement will be governed by and construed in accordance with the laws of the state of Oregon, without regard to conflict-of-laws principles.

Any disputes arising hereunder shall be heard by the U.S. Bankruptcy Court for the District of Oregon.

**16.13 Attorney Fees**. If any arbitration, suit, or action is instituted to interpret or enforce the provisions of this Agreement, to rescind this Agreement, or otherwise with respect to the subject matter of this Agreement, the party prevailing on an issue will be entitled to recover with respect to such issue, in addition to costs, reasonable attorney fees incurred in the preparation, prosecution, or defense of such arbitration, suit, or action as determined by the arbitrator or trial court, and if any appeal is taken from such decision, reasonable attorney fees as determined on appeal.

**16.14 Schedules and Exhibits**. The schedules and exhibits referenced in this Agreement are part of this Agreement as if fully set forth in this Agreement.

**16.15 Severability**. Whenever possible, each provision of this Agreement will be interpreted in such manner as to be effective and valid under applicable law. If any provision of this Agreement is held to be invalid, illegal or unenforceable in any respect by a court of competent jurisdiction, such invalidity, illegality or unenforceability will not affect any other provision and this Agreement shall be modified, construed and enforced as if such invalid, illegal or unenforceable provisions had never been contained herein so long as the purpose of the contract and the intent of the parties can be realized; provided, if the invalid, illegal or unenforceable clause can instead be modified to make it valid, legal and enforceable to partially realize its objective, the clause shall instead be so modified.

**16.16 Entire Agreement**. This Agreement (including the documents and instruments referred to in this Agreement) constitutes the entire agreement and understanding of the parties with respect to the subject matter of this Agreement and supersedes all prior understandings and agreements, whether written or oral, among the parties with respect to such subject matter.

**16.17 Bankruptcy Court Approval**.  Notwithstanding any other provision of this Agreement to the contrary, this Agreement is expressly contingent upon entry of an Order from the Bankruptcy Court approving the sale of the Assets in accordance with the terms of this Agreement.  Buyer acknowledges that the sale of the Assets will be subject to notice and overbid requirements.  If there is an overbid, Buyer shall have the right, but not the obligation, to participate in any further bid proceeding.  In the event the Bankruptcy Court does not approve the sale of the Assets in accordance with the terms of this Agreement including the purchase price, and Buyer has complied with all terms and conditions of this Agreement, then the Earnest Money shall be returned to Buyer and, except as otherwise provided in Section 9.4 of this Agreement, the parties shall have no liability to one another arising out of this Agreement or proposed transaction.  In the event of a bidding procedure, any bid by Buyer, apart from this Agreement, shall be on the terms set by the Seller at the time of bidding.  THE PARTIES ARE AWARE THAT THE SELLER MAY SELL THE ASSETS ONLY AFTER APPROVAL OF THE U.S. BANKRUPTCY COURT AS TO THIS SALE AND ITS TERMS.  THE PARTIES AGREE THAT THIS SALE IS CONTINGENT UPON RECEIVING SUCH APPROVAL FROM THE U.S. BANKRUPTCY COURT.

[Remainder of Page Left Blank]

The parties enter into this Agreement as of the date first written above.

Seller:
Aircraft Investor Resources, LLC
By: Kenneth S. Eiler, PC
Chapter 11 Trustee
No. 09-38458-rld11

By:     _____
            Kenneth S. Eiler, Trustee

Epic Air, LLC
By: Kenneth S. Eiler, PC
Chapter 11 Trustee
No. 09-38458-rld11

By:     _____
            Kenneth S. Eiler, Trustee

Aircraft Completion Services, LLC
By: Kenneth S. Eiler, PC
Chapter 11 Trustee
No. 09-38458-rld11

By:     _____
            Kenneth S. Eiler, Trustee

Buyer:
Harlow Aerostructures LLC

By:     _____
            Phillip C. Friedman, Chief Executive Officer

**Schedules:**

**Schedule 1.1 – Assets**
**Schedule 3 – Allocation of Purchase Price**
**Schedule of Exceptions**

**Exhibits:**

**A – Form of Bill of Sale**

LA1933271.2
209401-10001

16

The parties enter into this Agreement as of the date first written above.

Seller:
Aircraft Investor Resources, LLC
By: Kenneth S. Eiler, PC
Chapter 11 Trustee
No. 09-38458-rld11

By: _____
Kenneth S. Eiler, Trustee

Epic Air, LLC
By: Kenneth S. Eiler, PC
Chapter 11 Trustee
No. 09-38458-rld11

By: _____
Kenneth S. Eiler, Trustee

Aircraft Completion Services, LLC
By: Kenneth S. Eiler, PC
Chapter 11 Trustee
No. 09-38458-rld11

By: _____
Kenneth S. Eiler, Trustee

Buyer:
Harlow Aerostructures LLC

By: _____
Phillip C. Friedman, Chief Executive Officer

**Schedules:**

Schedule 1.1 – Assets
Schedule 3 – Allocation of Purchase Price
Schedule of Exceptions

**Exhibits:**

A – Form of Bill of Sale

LA1933271.2
209401-10001

16

The parties enter into this Agreement as of the date first written above.

Seller:
Aircraft Investor Resources, LLC
By: Kenneth S. Eiler, PC
Chapter 11 Trustee
No. 09-38458-rld11

By: _____
      Kenneth S. Eiler, Trustee

Epic Air, LLC
By: Kenneth S. Eiler, PC
Chapter 11 Trustee
No. 09-38458-rld11

By: _____
      Kenneth S. Eiler, Trustee

Aircraft Completion Services, LLC
By: Kenneth S. Eiler, PC
Chapter 11 Trustee
No. 09-38458-rld11

By: _____
      Kenneth S. Eiler, Trustee

Buyer:
Harlow Aerostructures LLC

By: _____
      Phillip C. Friedman, Chief Executive Officer

**Schedules:**

**Schedule 1.1 – Assets**
**Schedule 3 – Allocation of Purchase Price**
**Schedule of Exceptions**

**Exhibits:**

**A – Form of Bill of Sale**

## SCHEDULE 1.1
## ASSETS PURCHASED

(a)      All equipment, furniture, trade fixtures, tooling, molds, plugs, hand tools and other tangible personal property owned by the Seller, wherever located, including without limitation all of such property at the Nelson Road Facility other than WIP on the Closing Date;

(b)      All inventories of supplies, raw materials, parts, and finished goods inventory owned by the Seller, including without limitation all of such property at the Nelson Road Facility other than WIP on the Closing Date;

(c)      All of Seller's correspondence, engineering records, plant records, purchasing records, material or component testing information, customer lists, customer agreements, vendor agreements, maintenance records, construction logs, equipment or aircraft servicing records and all other similar business records and files, including all electronic files on Seller's server held by the Trustee, including without limitation all of such property at the Nelson Road Facility other than WIP on the Closing Date;

(d)      All of Seller's intangible intellectual property, including all aircraft designs (LT, Dynasty, Elite, Escape, Victory, Polar, Genesis, Elegance Twin and any other aircraft or aircraft component design created by the Seller), engineering work product, tooling technology, manufacturing processes and technology, copyrighted material, branding, drawings, and photographic images, and any intellectual property owned by Seller derived from any joint venture in which Seller was a participant;

(e)      The Seller's rights and goodwill in the name and branding known as "LT" "Epic LT", "Dynasty", "Epic Dynasty", "Epic", "Elite", "Epic Elite", "Victory", "Epic Victory", "Escape", "Epic Escape", "Polar", "Genesis" and "Elegance Twin";

(f)      All patents, trademarks, trade names, copyrights, service marks, and domain names of the Seller used in the operation of the Business, all registrations for them, all applications pending for them, and all other proprietary rights and intangible property of the Seller not covered by subsections (d) and (e), including trade secrets, inventions, technology, software, operating systems, customer relationships, customer understandings, drawings, blueprints, know-how, formulae, slogans, processes, and operating rights and all other similar items and all such items owned or acquired by the Seller or coming into existence on or before the Closing Date;

(g)      To the extent transferable, all approvals, entitlements, authorizations, consents, licenses, permits, franchises, tariffs, orders, and other registrations of any federal, state, or local court or other governmental department, commission, board, bureau, agency, or instrumentality held by the Seller and required, useful or appropriate for the conduct of the Business and all such items granted or received on or before the Closing Date;

(h)      All rights and benefits of Seller to enforce nondisclosure agreements, confidentiality agreements or similar agreements of which AIR, Epic or ACS was a party relating to the protection of confidential information and trade secrets.

(i)      All interest, legal or equitable, of the Seller in the joint venture with Larry Carter, including any interest in RL4U, LLC, and including any rights of the Seller in the Victory or Escape aircraft and related intellectual property.

(j)      All of Seller's rights in and to the cross-license to use all existing intellectual property relating to the common elements of the Epic and F1 prototype(s), and all other rights

and benefits awarded to the respondent, subject to all restrictions and limitations as provided for therein, as awarded in that certain Arbitrator's Findings and Award in Case No. 05-1202-2, Farnborough Aircraft Corporation, Limited v. Aircraft Investors Resources, LLC and Rick Schramek, including all supplemental orders.

(k)    All interest, legal or equitable, of the Seller in Tam Air, Inc. and the joint venture or co-development arrangement with Tbilaviamsheni Ltd.

(l)    All interest, legal or equitable, of the Seller in Aircraft Resources Canada, Ltd.

(m)    To the extent assignable, all of the Seller's rights under all supply contracts to which the Seller is a party, subject to the Buyer having the right to accept or reject each of such contracts and, with respect to each contract which the Buyer accepts, the Buyer shall be liable for all cure obligations (pursuant to Section 365 of the United States Bankruptcy Code) with respect thereto.

(n)    All of the Seller's claims, demands and causes of action, if any, with respect to any tangible Assets (i) taken or seized prior to the Closing by any of the members of AIR, Epic or ACS, or any of the members, officers, trustees, employees, or agents of such members, or their spouses, or any entity affiliated with such member, including without limitation Rick Schramek, Annette Elder, Quick-Turn Technologies, LLC and Quick-Turn Aerospace, LLC, or (ii) transferred by, under the direction of or to any of the foregoing individuals or entities prior to the Closing.

**SCHEDULE 3**
**ALLOCATION OF THE PURCHASE PRICE**

[to be provided]

# SCHEDULE OF EXCEPTIONS

**Exhibit A**

**BILL OF SALE**

Pursuant to that certain Asset Purchase Agreement dated _____, 2010 (the "Agreement"), AIRCRAFT INVESTOR RESOURCES, LLC; EPIC AIR, LLC; AND AIRCRAFT COMPLETION SERVICES, LLC ("Seller"), hereby grants, sells and delivers to _____ ("Buyer"), all of the Assets described in the Agreement, including the equipment, furnishings, trade fixtures and other personal property described on the attached Exhibit A. Capitalized terms not otherwise defined in this Bill of Sale shall have the meanings set forth in the Agreement, which is incorporated herein by reference.

Except for representations and warranties of Seller expressly set forth in the Agreement, Seller is selling the Assets "AS-IS, WHERE-IS" and hereby disclaims all warranties, express or implied, including the implied warranties of merchantability and fitness for a particular purpose.

DATED this _____ day of _____, 2010.

Aircraft Investor Resources, LLC
By: Kenneth S. Eiler, PC
Chapter 11 Trustee
No. 09-38458-rld11


By:_____
      Kenneth S. Eiler, President

Epic Air, LLC
By: Kenneth S. Eiler, PC
Chapter 11 Trustee
No. 09-38458-rld11


By:_____
      Kenneth S. Eiler, President

Aircraft Completion Services, LLC
By: Kenneth S. Eiler, PC
Chapter 11 Trustee
No. 09-38458-rld11


By:_____
      Kenneth S. Eiler, President

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | Bankruptcy Case No. |
| **Aircraft Investor Resources, LLC**; | 09-38458-rld11 **LEAD CASE** |
| **Epic Air, LLC;** | 09-40041-rld7 |
| **Aircraft Completion Services, LLC;** | 10-30185-rld7 |
| Each a Debtor. | **ORDER (I) APPROVING BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF ASSETS; (II) APPROVING A BREAKUP FEE; (III) AUTHORIZING AND SCHEDULING AN AUCTION ON MARCH 26, 2010 IN CONNECTION WITH THE SALE; (IV) CONFIRMING MARCH 30, 2010 HEARING FOR FINAL APPROVAL OF SALE; AND (V) APPROVING NOTICE OF AUCTION AND SALE HEARING** |

This matter came before the Court for hearing on March 4, 2010, upon the motion

(the "Sale Procedures Motion")[1] of Kenneth Eiler, Chapter 11 Trustee in the above-captioned

---

[1] All capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Sale Procedures Motion.

Page 1 -  **ORDER FIXING DATE, TIME AND PLACE FOR HEARING AND PRESCRIBING NOTICE THEREOF AND PROCEDURES RE TRUSTEE'S MOTION FOR ORDERS, ETC.**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

**Exhibit B**
**Page 1 of 13**

case (the "Trustee"), for an order (this "Sale Procedures Order"):  (i) approving the bidding

procedures set forth as **Exhibit A** hereto (the "Bidding Procedures") in connection with the

proposed sale (the "Proposed Sale") of all or substantially all of the assets of the Debtor

(collectively, the "Assets"), which bidding procedures shall govern the Auction (as defined

below); (ii) approving those provisions of the Asset Purchase Agreement dated as of

February 22, 2010 (the "Stalking Horse Bid") by and between the Debtor, as seller, and Harlow

Aerostructures, LLC as purchaser (the "Stalking Horse Bidder"), providing for payment of a

breakup fee (the "Breakup Fee") to the Stalking Horse Bidder, in accordance with the terms and

subject to the conditions set forth in the Stalking Horse Bid; (iii) authorizing and scheduling an

auction (the "Auction") in connection with such Proposed Sale, at which auction the Trustee will

solicit higher or better offers for the Assets, in accordance with the Bidding Procedures; (iv)

approving the form and manner of notice of the Proposed Sale to the Stalking Horse Bidder (or

such other Prevailing Bidder as may be determined at the Auction in accordance with the

Bidding Procedures), the Bidding Procedures, the Auction and the hearing for final approval of

the sale (the "Sale Hearing"), substantially in the form attached hereto as **Exhibit B** (the "Notice

of Auction and Sale Hearing"); and (v) scheduling the Sale Hearing; and the Court having held a

hearing on the Sale Procedures Motion on March 4, 2010; and having considering the

submissions and arguments of counsel and the files and records herein; and now being fully

advised of the premises; and after due deliberation thereon and sufficient cause appearing

therefor, the Court FINDS THAT:

      A.     On September 10, 2009, Aircraft Investor  Resources, LLC ("Aircraft

Investor") filed a petition for relief under Title 11, Chapter 11 of the U.S. Code.  On February

Page 2 -  **ORDER FIXING DATE, TIME AND PLACE FOR HEARING AND PRESCRIBING NOTICE THEREOF AND PROCEDURES RE TRUSTEE'S MOTION FOR ORDERS, ETC.**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

23, 2010, the Bankruptcy Court granted the motion of the Trustee for an order, pursuant to 11

U.S.C. § 105(a), substantively consolidating the estate of AIR with (a) the bankruptcy estate of

Epic Air, LLC ("Epic Air"), pending before this Court as Case No. 09-40041-rld7; and (b) the

bankruptcy estate of Aircraft Completion Services, LLC ("ACS"), pending before this Court as

Case No. 10 30185-rld7.  Aircraft Investor, Epic Air and ACS are referred to collectively herein

as the "Debtor" or "AIR".

   B. A committee of unsecured creditors has been appointed in this case.  On

October 27, 2009, the Court entered an Order approving the appointment of Kenneth Eiler as

Chapter 11 Trustee of Aircraft Investor.

   C. This Court has jurisdiction over this Sale Motion pursuant to 28 U.S.C. §§

157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2).

   D. The statutory predicate for the relief requested herein is 11 U.S.C. §§ 105,

363 and 365.

   E. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

   F. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

   G. Findings of fact shall be construed as conclusions of law and conclusions

of law shall be construed as findings of fact when appropriate.

   H. Good and sufficient notice of the Sale Procedures Motion and the relief

sought therein has been given and no other or further notice is required.  A reasonable

Page 3 - **ORDER FIXING DATE, TIME AND PLACE FOR HEARING AND PRESCRIBING NOTICE THEREOF AND PROCEDURES RE TRUSTEE'S MOTION FOR ORDERS, ETC.**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

opportunity to object or be heard regarding the relief requested in the Sale Procedures Motion

has been afforded to parties in interest, including the following:  (i) the Office of the United

States Trustee for the District of Oregon (the "U.S. Trustee"); (ii) the official committee of

unsecured creditors appointed in this case (the "Committee"); (iii) those parties which have

expressed an interest in bidding on the Assets; (iv) those persons who have requested notice

pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules");

and (v) the Stalking Horse Bidder (collectively, the "Initial Notice Parties").

      I.      The form of Notice of Auction and Sale Hearing attached hereto as

Exhibit B is good, appropriate, adequate and sufficient, and is reasonably calculated to provide

all interested parties with timely and proper notice of the Proposed Sale, the Auction, the

Bidding Procedures and the Sale Hearing.

      J.      The amount of the Breakup Fee is fair and reasonable, provides a benefit

to the estate and creditors, and results from good faith and arm's length negotiations between the

parties.

      K.      The Breakup Fee is:  (i) an actual and necessary cost and expense of

preserving the Debtor's estate pursuant to section 503(b) of the Bankruptcy Code; (ii) of

substantial benefit to the Debtor's estate; (iii) reasonable and appropriate in light of the size,

nature and complexity of the Proposed Sale and the efforts (and the significant due diligence

costs and expenses) that have been and will be expended by the Stalking Horse Bidder even

though the Proposed Sale is subject to overbid; (iv) not a penalty, but a reasonable estimate of

the damages to be suffered by the Stalking Horse Bidder in the event the transactions

Page 4 -  **ORDER FIXING DATE, TIME AND PLACE FOR HEARING AND PRESCRIBING NOTICE THEREOF AND PROCEDURES RE TRUSTEE'S MOTION FOR ORDERS, ETC.**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

contemplated by the Stalking Horse Bid are not consummated under the circumstances set forth

therein; and (v) necessary to ensure that the Stalking Horse Bidder will continue to pursue the

Proposed Sale.

        L.     Entry of this Sales Procedures Order is in the best interests of the estate,

its creditors and other parties in interest, as the Trustee will, among other things, retain for the

benefit of its estate the prospect of a successful sale to the Stalking Horse Bidder, while enabling

the Trustee to solicit competing bids.  A prompt sale of the Assets will maximize the amount that

the estate and its creditors and interest holders will realize for such Assets.

        M.     The terms and conditions of the Auction and Bidding Procedures were

proposed by the Trustee in good faith with the goal of maximizing the value of the Assets, are

fair and reasonable and in the best interests of the estate and its creditors and interest holders,

represent an exercise of the Trustee's sound business judgment, and will facilitate an orderly sale

process.

        NOW THEREFORE, IT IS HEREBY ORDERED THAT:

        The relief requested in the Sale Procedures Motion is hereby granted in all

respects.

        Any objections to the entry of this Sale Procedures Order that have not been

withdrawn, waived, resolved or settled are overruled.

Page 5 -  **ORDER FIXING DATE, TIME AND PLACE FOR HEARING AND PRESCRIBING NOTICE THEREOF AND PROCEDURES RE TRUSTEE'S MOTION FOR ORDERS, ETC.**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

**Exhibit B
Page 5 of 13**

A.      <u>Bidding Procedures</u>

The Bidding Procedures, as set forth in Exhibit A hereto, are hereby approved in their entirety.  All proceedings relating to (i) the submission, consideration, qualification and acceptance of Qualified Overbids submitted to the Trustee, (ii) the Auction, and (iii) the identification and determination of the Prevailing Bid shall be governed by and conducted in accordance with the Bidding Procedures.  The failure in this Sale Procedures Order to include specifically or reference any particular provision, section or article of the Bidding Procedures shall not diminish or impair the effectiveness of the Bidding Procedures, it being the intent of this Court that the Bidding Procedures be authorized and approved in their entirety and are incorporated herein by reference.

B.      <u>Breakup Fee is Approved</u>

The Stalking Horse Bidder is entitled to payment of the Breakup Fee on the terms and subject to the conditions set forth in the Stalking Horse Bid.

The Trustee is authorized and empowered to pay the Breakup Fee as an administrative claim to the Stalking Horse Bidder, if and as required under, and on the terms and subject to the conditions of, the Stalking Horse Bid.  In addition, the Breakup Fee shall be paid from the sale proceeds of any competing transaction.

C.      <u>The Auction</u>

The Trustee may conduct the Auction in accordance with the Bidding Procedures. The Auction, if required, will commence **at 10:00 a.m. (Prevailing Pacific Time) on March 26, 2010** at the offices of Ball Janik LLP, or at such later time and at such other place as the Trustee

Page 6 -  **ORDER FIXING DATE, TIME AND PLACE FOR HEARING AND PRESCRIBING NOTICE THEREOF AND PROCEDURES RE TRUSTEE'S MOTION FOR ORDERS, ETC.**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

**Exhibit B
Page 6 of 13**

shall notify all Qualifying Bidders who have submitted Qualified Overbids and all other Persons

entitled to attend the Auction.

D.    The Sale Hearing

A hearing to approve the Proposed Sale to the Stalking Horse Bidder or,

alternatively, the transaction that is the subject of the Prevailing Bid to the Prevailing Bidder, as

the case may require, shall be conducted **at 9:30 a.m. (Prevailing Pacific Time) on March 30,**

**2010**, or at such later time as determined by this Court.

E.    Notice of Auction and Proposed Sale

The notice of, among other things, (i) the Proposed Sale, (ii) entry of this Sale

Procedures Order, (iii) the Bidding Procedures, (iv) the Auction and (v) the Sale Hearing,

substantially in the form of the Notice of Auction and Sale Hearing attached hereto as Exhibit B,

is approved in all respects.

F.    Objections to Relief Sought at Sale Hearing

At the Sale Hearing, the Trustee may seek entry of an order authorizing and

approving:  (i) if no Qualified Overbid is received other than that of the Stalking Horse Bidder,

the transaction contemplated by the Stalking Horse Bid, or (ii) if another Qualified Overbid is

received by the Sellers, such other transaction contemplated by the Prevailing Bid (in either case,

the "Proposed Approval Order").

Any objections to the entry of the Proposed Approval Order must be filed with the

Court, and served so that it is RECEIVED by counsel for the Trustee and the Stalking Horse

Page 7 -  **ORDER FIXING DATE, TIME AND PLACE FOR HEARING AND PRESCRIBING NOTICE THEREOF AND PROCEDURES RE TRUSTEE'S MOTION FOR ORDERS, ETC.**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

**Exhibit B
Page 7 of 13**

Bidder **by no later than 5:00 p.m. (Prevailing Pacific Time) on March 22, 2010** (the

"Objection Deadline").  Any party filing an objection to the motion seeking entry of the

Proposed Approval Order must attend the Sale Hearing and advocate its objection at such

hearing.  The failure of any person or entity to timely file, serve and/or advocate its objection in

accordance with this paragraph shall be a bar to the assertion, at the Sale Hearing or thereafter,

of any objection to the Proposed Approval Order, and such objection shall be deemed waived.

The Sale Hearing may be adjourned, from time to time, without further notice to

creditors or parties in interest other than by announcement of said adjournment in Court or on

this Court's calendar on the date scheduled for such hearing.

G.     Additional Provisions

Notwithstanding any provision in the Bankruptcy Rules to the contrary, the

Trustee is not subject to any stay in the implementation, enforcement or realization of the relief

granted in this Sale Procedures Order, and the Debtor may, in its discretion and without further

delay, take any action and perform any act authorized under this Sale Procedures Order.

Pursuant to Rules 6004(h) and 6006(d) of the Bankruptcy Rules, this Sale Procedures Order shall

be effective and enforceable immediately upon entry.

The terms and provisions of this Sale Procedures Order shall be binding in all

respects upon the Trustee, the Stalking Horse Bidder, and their respective Affiliates, successors

and assigns, including, without limitation, any trustee or examiner appointed in these chapter 11

cases or any case under chapter 7 of the Bankruptcy Code to which these chapter 11 cases may

be converted, and any affected third parties.

Page 8 -  **ORDER FIXING DATE, TIME AND PLACE FOR HEARING AND PRESCRIBING NOTICE THEREOF AND PROCEDURES RE TRUSTEE'S MOTION FOR ORDERS, ETC.**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

**Exhibit B
Page 8 of 13**

Service of the notices described herein on the parties entitled to receive such notices pursuant to this Sale Procedures Order shall constitute proper, timely, adequate and sufficient notice thereof and satisfies the requirements of sections 105, 363 and 365 of the Bankruptcy Code and of the Bankruptcy Rules and Local Bankruptcy Rules, and no other or further notice is or shall be required.

This Court shall retain jurisdiction over any matter or dispute arising form or relating to the implementation of this Sale Procedures Order.

# # #

Presented by:

BALL JANIK LLP

By: /s/ David W. Criswell
    **David W. Criswell, OSB No. 925930**
    dcriswell@balljanik.com
    **Justin D. Leonard, OSB No. 033736**
    jleonard@balljanik.com
    101 SW Main Street, Suite 1100
    Portland, OR  97204
    Telephone:  (503) 228-2525
    Facsimile:   (503) 295-1058

Attorneys for Kenneth S. Eiler,
Chapter 11 Trustee of AIR

Page 9 -  **ORDER FIXING DATE, TIME AND PLACE FOR HEARING AND PRESCRIBING NOTICE THEREOF AND PROCEDURES RE TRUSTEE'S MOTION FOR ORDERS, ETC.**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

**Exhibit B
Page 9 of 13**

## Exhibit A to Sale Procedures Order

## Bidding Procedures

A.    <u>Bids</u>.  Any third party (other than Harlow) that is interested in being a participant in the Auction (defined below) and acquiring all or substantially all of the Assets (each a "Bidder") must submit a "Bid" as provided herein prior to **3:00 p.m. Prevailing Pacific time on Wednesday, March 24, 2010** (the "Bid Deadline"). Any such Bid must:

(1)    Contain a signed definitive asset purchase agreement in substantially the form of the Purchase Agreement (marked to show changes from the Purchase Agreement) with, at a minimum, the following requirements: (i) designating the Assets or other assets of the Debtor to be acquired and having similar terms and conditions as the Purchase Agreement; (ii) provide for a purchase price with respect to the Assets in an amount which is at least $200,000 more than the initial bid offered by Harlow under the Purchase Agreement; (iii) provide that the purchaser thereunder will forfeit the Termination Fee (defined below), as liquidated damages if such purchaser defaults under such purchase agreement; (iv) not be subject to any (a) financing contingency, (b) contingency relating to the completion of unperformed due diligence, (c) contingency relating to the approval of the Bidder's board of directors or other internal approvals or consents, or (d) any conditions precedent to the Bidder's obligation to purchase the Assets other than those included in the Purchase Agreement; and (v) no Bid shall provide for the payment to the Bidder of any breakup fee, topping fee, expense reimbursement or other similar arrangement.

(2)    Include a deposit (the "Sale Deposit") in the form of either a wire transfer to an account specified by the Trustee or a certified check in the amount of $200,000 payable to the order of the Trustee and such deposit shall be held in escrow in a segregated account of the Trustee pending the closing of the asset sale, which amount shall be forfeited as liquidated damages if such Bidder is the Purchaser (defined below) and fails to close the transaction because of a breach or failure to perform on the part of the Purchaser (the "Termination Fee");

(3)    To the extent not previously provided to the Trustee, include an executed confidentiality agreement (in form and substance reasonably satisfactory to the Trustee);

(4)    To the extent not previously provided to the Trustee, be accompanied by evidence satisfactory to the Trustee in his commercially reasonable discretion that Bidder is willing, authorized, capable and qualified

**Page 1 - Exhibit A to Sale Procedures Order**

::ODMA\PCDOCS\PORTLAND\695951\2

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

financially, legally and otherwise, of unconditionally performing all obligations under the Purchase Agreement in the event that it submits the Prevailing Bid (defined below) at the Auction; and

(5)     Be submitted to counsel for the Trustee so as to be received not later than the Bid Deadline.  Counsel shall, as soon as practicable, send a copy of each Bid received, if any, to the following parties:  (i) counsel to Harlow; (ii) counsel for the creditors committee appointed in this case; and (iii) either counsel to each Bidder submitting a bid, or if a Bidder does not have counsel, to any other Bidder.

B.     <u>Auction</u>.  In the event that the Trustee determines, in his sole reasonable discretion, that a qualifying Bid has been received from a prospective purchaser other than Harlow (a "Qualified Bidder"), then the Trustee will conduct the Auction among Harlow and all Qualified Bidders on **Friday, March 26, 2010 at 10:00 a.m.** with respect to the sale of the Assets at the offices of Ball Janik LLP, 101 SW Main Street, 11th Floor, Portland, OR 97204 or at such other location as may be designated by the Trustee.  The Trustee will provide no less than 24 hours' notice to Harlow and to all Qualified Bidders that the Auction will be held.  All bids must be for cash or cash equivalents acceptable to the Trustee.  The Trustee shall determine the highest and best bid in its sole discretion.  The "Purchaser" shall be the party that submits the highest and best bid at the Auction.  No bids may be received after the announced conclusion of the Auction.  At the Auction, Harlow and Qualified Bidders may submit successive bids in increments of at least $50,000 greater than the prior bid (the "Incremental Bid Amount") for the purchase of all or substantially all of the Assets until there is only one bid that the Trustee determines, in his sole discretion, and subject to Bankruptcy Court approval, is the highest and best bid (the "Prevailing Bid").  If no conforming Bid from a Qualified Bidder shall have been received at or prior to the Bid Deadline, no Auction will be held.  In the event that the Purchaser defaults or fails to close the proposed transactions, then the party who, in the determination of the Trustee, submitted the prior high bid for the Assets shall be deemed to be the Purchaser, and the purchase price shall be the amount of such prior high bid.  Notwithstanding the foregoing, the Trustee may impose such other timing, terms and conditions as he may determine to be in the best interest of the estate, its creditors and other parties in interest; provided such terms and conditions shall not be materially inconsistent with the terms of the Purchase Agreement.

C.     <u>Bankruptcy Court Approval of Sale</u>.  The Trustee and the Purchaser, once the Purchaser has been determined, shall each use their commercially reasonable efforts, and shall cooperate, assist and consult with each other, to secure the entry of an order (the "Sale Approval Order"), which is reasonably acceptable to the Trustee and the Purchaser (it being understood that, pursuant to the Purchase Agreement, the Sale Approval Order will not have required any change to the

**Page 2 -  Exhibit A to Sale Procedures Order**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

**Exhibit B
Page 11 of 13**

terms and conditions of the Purchase Agreement other than changes consented to in writing by the Purchaser), of the Bankruptcy Court (i) approving the Purchase Agreement, (ii) authorizing the sale of the Assets pursuant to section 363 of the Bankruptcy Code, free and clear of all liens, claims, interests and encumbrances, and (iii) authorizing the assumption and/or assignment of the executory contracts pursuant to section 365 of the Bankruptcy Code, if any.  In connection with the assumption and/or assignment of the executory contracts pursuant to section 365 of the Bankruptcy Code, the Purchaser shall take all reasonable actions required to provide "adequate assurance of future performance" by the Purchaser after the closing of such sale.  Purchaser shall also be responsible for any and all "cure costs" necessary to assume any such executory contracts.  If for any reason the Purchaser is unable or unwilling to consummate an approved sale because of breach or failure to perform on the part of the Purchaser, (a) it will forfeit its Termination Fee to the Trustee as liquidated damages in lieu of any other damages with respect to such breach, and (b) the Bidder making the next highest or otherwise best bid shall be deemed to be the Purchaser, the purchase price shall be the amount of such Qualified Bidder's last bid, and the Trustee shall be authorized to effectuate the sale without further order of the Bankruptcy Court.

D.     <u>Hearing on Sale Under Section 363</u>.  The Trustee will present a Sale Approval Order for entry at an evidentiary hearing on March 30, 2010, commencing at 9:30 a.m.

**Page 3 -  Exhibit A to Sale Procedures Order**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

**Exhibit B to Sale Procedures Order**

**Form of Notice of Auction and Sale Hearing**

[To be filed prior to the Hearing on March 4, 2010]

**Page 1 -  Exhibit B to Sale Procedures Order**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

**Exhibit C to Sale Motion**

**<u>Sale Order</u>**

[To be filed prior to the Hearing on March 4, 2010]

## CERTIFICATE OF SERVICE

I hereby certify that I served copies of the foregoing **TRUSTEE'S MOTION FOR ORDERS:  (A) AUTHORIZING AND SCHEDULING AN AUCTION TO SOLICIT BIDS FOR THE SALE OF SUBSTANTIALLY ALL ASSETS RELATED TO THE DEBTORS' BUSINESS FREE AND CLEAR OF LIENS, INTERESTS AND ENCUMBRANCES; (B) APPROVING BIDDING PROCEDURES; (C) APPROVING PURCHASE AGREEMENT OR SUBSEQUENT OVERBID; (D) CONFIRMING THE SCHEDULING OF MARCH 30, 2010 HEARING TO CONSIDER APPROVAL OF THE SALE; AND (E)  ESTABLISHING THE FORM AND MANNER OF NOTICES RELATED THERETO** on the following parties **by CM/ECF**:

ROBERT E ATKINSON    robert@kupperlin.com, bknotices@kupperlin.com

J RION BOURGEOIS    rion@att.net

BARRY P CAPLAN    barry@sussmanshank.com, ctolle@sussmanshank.com

CRAIG J CAPON    craig.j.capon@harrang.com,
ann.flagg@harrang.com;marjorie.berger@harrang.com;deborah.boersma@harrang.com

THOMAS H FELL    bankruptcynotices@gordonsilver.com, bknotices@gordonsilver.com

GARY FIRESTONE    gfirestone@ci.bend.or.us, nflannigan@ci.bend.or.us

SUSAN S FORD    susanf@sussmanshank.com, ecf.susan.ford@sussmanshank.com

JAMES K HEIN    james.hein@tonkon.com, judy.alexander@tonkon.com

BRIAN T HEMPHILL    brian@hemphill-attorney.com

THOMAS K HOOPER    bmail@hooplaw.com, csayles@hooplaw.com

EDWARD A MERRILL    merrill_law@hotmail.com

CRAIG G RUSSILLO    crussillo@schwabe.com,
dkinonen@schwabe.com;docket@schwabe.com;bankruptcynotices@schwabe.com

LISA M SCHILLER    lschiller.ecf@rprslaw.com., jheredia@rprslaw.com

TARA J SCHLEICHER    tschleicher@fwwlaw.com, dfallon@fwwlaw.com;ldemeter@fwwlaw.com

ELIZABETH H SHEA    eshea@hackerwillig.com,
donna@hackerwillig.com;debbie@hackerwillig.com;arnie@hackerwillig.com

TIMOTHY A SOLOMON    ecf.timothy.solomon@sussmanshank.com

**Page 1 -    CERTIFICATE OF SERVICE**

::ODMA\PCDOCS\PORTLAND\695764\3

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

US Trustee, Portland    USTPRegion18.PL.ECF@usdoj.gov

JAMES C WAGGONER    jimwaggoner@dwt.com, connieanderson@dwt.com;marciebutler@dwt.com

J STEPHEN WERTS    swerts@cablehuston.com,
dalbin@cablehuston.com;cstokes@cablehuston.com;candrews@cablehuston.com

ARNOLD M WILLIG    arnie@hackerwillig.com, debbie@hackerwillig.com,donna@hackerwillig.com

and on the following parties by **mailing** a full, true and correct copy in a sealed first-class
postage prepaid envelope, addressed to the parties listed below, and deposited with the United
States Postal Service at Portland, Oregon on the date set forth below:

ROBERT ATKINSON
10120 S Eastern Ave #202
Henderson, NV 89052

JOHN M BERMAN
7175 SW Beveland St #210
Tigard, OR 97223

Blue Sky Avgroup, LLC
C/O Richard J. Lucibella
5 Beachway North
Ocean Ridge, FL 33435

BRIAN L GINGERICH
Schwabe Williamson & Wyatt, PC
549 SW Mill View Way Ste 100
Bend, OR 97702

TERESA M KRPATA
3960 Howard Hughs Pkwy, 9th Fl
Las Vegas, NV 89169

NILE LEATHAM
3320 W Sahara Ave #380
Las Vegas, NV 89102

N395WKLLC
Walter Schlotfeldt
C/O Hacker & Willig, Inc.
1501 Fourth Ave., #2150
Seattle, WA 98101

AMBRISH S SIDHU
810 S Casino Center Blvd #104
Las Vegas, NV 89101

JOSEPH G WENT
3320 W Sahara Ave #380
Las Vegas, NV 89102

DATED:  February 24, 2010

  /s/ Stuart Wylen
Stuart Wylen, Legal Secretary

**Page 2 -    CERTIFICATE OF SERVICE**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525